REED SMITH LLP
 Michael J. Venditto
 Sarah K. Kam
599 Lexington Avenue
New York, NY 10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450

*Attorneys for Cao Xinyi, as Petitioner and*
*Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| WINSWAY ENTERPRISES HOLDINGS LIMITED, *f/k/a* WINSWAY COKING COAL HOLDINGS LIMITED, a company incorporated with limited liability under the laws of the British Virgin Islands, | Case No. 16-_____ (    ) |
| Debtor in a Foreign Proceeding. | |

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN**
**NONMAIN PROCEEDING SUPPLEMENTING THE VOLUNTARY**
**PETITION [ECF No. 1] AND MOTION FOR RELATED RELIEF**

Cao Xinyi (the "Petitioner"), duly appointed by a February 25, 2016 resolution of the

directors of Winsway Enterprises Holdings Limited, formerly known as Winsway Coking Coal

Holdings Limited ("Winsway" or the "Debtor"), a company incorporated with limited liability

under the laws of the British Virgin Islands and registered as a non-Hong Kong company in

Hong Kong under Part XI of the then Companies Ordinance, as the foreign representative of

Winsway in a scheme of arrangement pursuant to sections 673 and 674 of the Companies

Ordinance (Cap 622) of Hong Kong (the "Hong Kong Proceeding") currently pending before the

High Court of the Hong Kong Special Administrative Region (the "Hong Kong Court"), by and

through her undersigned counsel, respectfully submits this Verified Petition in furtherance of the

Form of Voluntary Petition filed concurrently herewith [ECF No. 1] (collectively herewith, the "Petition") for entry of an order (i) recognizing the Hong Kong Proceeding as a foreign nonmain proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"),[1] and (ii) granting further permanent relief pursuant to sections 105(a), 1507(a), 1509(b)(2)-(3), 1521(a) and 1525(a) of the Bankruptcy Code, all in support of the financial restructuring of Winsway under Hong Kong law (the "Restructuring") through, among other things, a scheme of arrangement (the "Scheme"), on the express condition that such Scheme is duly approved by a requisite majority of affected creditors, sanctioned by the Hong Kong Court and fully implemented pursuant to the terms thereof, all in accordance with applicable Hong Kong law. In support of the Petition, the Petitioner has filed concurrently herewith and incorporated herein by reference the Declaration of Cao Xinyi pursuant to 28 U.S.C. § 1746 (the "Xinyi Declaration"), and respectfully represents as follows:

## BACKGROUND

1.      The Petitioner filed the Petition with this Court on April 6, 2016.

2.      Winsway commenced the Scheme by filing its originating summons (and supporting materials) with the Hong Kong Court on February 26, 2016. At Winsway's request, the Hong Kong Court entered an order convening the meeting of creditors to vote on the Scheme (the "Scheme Meeting"), which is to be held on May 3, 2016. A copy of the Hong Kong Court's order initiating the Hong Kong Proceeding is annexed hereto as Exhibit A.

3.      The Scheme will be considered approved at the Scheme Meeting if it is supported by a majority in number representing at least 75 per cent (by value) of the claims of each class of creditors present and voting (whether in person or by proxy) at the Scheme Meeting. In this

---

[1]       Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.

case, there is only one class of creditors for voting purposes; that class is comprised entirely of creditors holding beneficial interests in the Notes (defined below).

4.      If the Scheme is approved at the Scheme Meeting, the Hong Kong Court will conduct a fairness and sanctioning hearing (the "Sanction Hearing") on May 17, 2016 to determine whether to sanction the Scheme. At that hearing, the Hong Kong Court will consider whether the necessary statutory requirements have been satisfied, namely that (i) the classes of creditors were properly constituted, (ii) the Scheme Meeting was properly convened in compliance with its directions, (iii) the requisite majorities of voting creditors have approved the Scheme, and (iv) the Scheme is one which an intelligent and honest man as a member of the class concerned and acting in respect of his own interest might reasonably approve. The Hong Kong Court must also find that the class was fairly represented and the statutory majority acted in good faith and did not coerce the minority in order to promote interests adverse to those of the creditor class. Further information about the Hong Kong Proceeding is set forth in the Xinyi Declaration, and the documents referred to and annexed to it.

5.      A condition precedent to the Scheme becoming fully effective and operational (*i.e.*, the occurrence of the Restructuring Effective Date) is the entry of an order of this Court recognizing the Hong Kong Proceeding under chapter 15. Accordingly, the Petitioner requests that this Court schedule a hearing pursuant to section 1517 of the Bankruptcy Code prior to May 5, 2016.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the Amended Standing Order of Reference, dated January 31, 2012, 12 Misc. 00032 (S.D.N.Y., Feb. 1, 2012) (Preska, C.J.).

7.    This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of the Petition for recognition of the Hong Kong Proceeding under section 1515 of the Bankruptcy Code.

8.    Venue is proper in this district.  Section 1410 of title 28 of the United States Code provides that a case under chapter 15 of title 11 may be commenced in a district in which the debtor has its principal place of business or principal assets in the United States.  28 U.S.C. § 1410(1); see also In re Berau Capital Resources Pte Ltd., No. 15-11804 (MG), 2015 WL 6507871 (Bankr. S.D.N.Y. Oct. 28, 2015).

9.    Winsway's principal assets in the United States are located within this district. On February 4, 2016, Winsway deposited approximately $49,978.00 into the client account of Reed Smith LLP.  *See* Xinyi Declaration, ¶ 65.  These funds continue to be held for Winsway's benefit within the Southern District of New York by Reed Smith LLP in its client funds account at Citibank N.A. at the East 53rd Street, New York, New York branch.  *See* Xinyi Declaration, ¶ 65.  In addition, as is detailed in the Xinyi Declaration, Winsway is an obligor in respect of a material amount of U.S. dollar denominated debt (originally $500 million, now approximately $350m); New York law expressly governs the debt indenture, which includes a New York choice of forum clause.  *See* Xinyi Declaration, ¶ 67.  Under the Indenture, Winsway has appointed an authorized agent for service of process in New York and numerous acts must be performed in New York City.  *See* Xinyi Declaration, ¶ 68.

## RELIEF REQUESTED

10.    The Petitioner requests that this Court enter an order, substantially in the form of the proposed order attached hereto as Exhibit B, pursuant to sections 105(a), 1507(a), 1509(b)(2)-(3), 1515, 1517, 1521(a) and 1525(a) of the Bankruptcy Code that:

(a)    grants recognition to the Hong Kong Proceeding as a foreign nonmain proceeding (as defined in section 1502(5) of the Bankruptcy Code), and grants all of the relief afforded to such proceedings, pursuant to sections 1517(a) and (b)(2) of the Bankruptcy Code;

(b)    recognizes the Petitioner as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Hong Kong Proceeding;

(c)    entrusts Petitioner with the administration of any and all of the Debtor's assets within the territorial jurisdiction of the United States;

(d)    provides that, as of the Final Distribution Date (as defined in the Explanatory Statement) upon completion of all of the steps set out in Clause 11.3.1 of the Scheme (and provided that the step set out in Clause 11.2.3 of the Scheme has been completed), the Restructuring Documents numbered 2 to 8 inclusive in Schedule 1 to the Scheme (collectively, the "Restructuring Documents") and the releases contained in sections 28.1 and 28.2 of the Scheme are recognized, granted comity, and entitled to full force and effect against all entities (as that term is defined in section 101(15) of the Bankruptcy Code) in accordance with their terms, and such terms shall be binding and fully enforceable on all Scheme Creditors whether or not they actually agreed to be bound by the Scheme or the Restructuring Documents or participated in the Hong Kong Proceeding;

(e)    provides that, as of the Initial Distribution Date (as defined in the Explanatory Statement) upon completion of all of the steps set out in Clause 11.2.1 of the Scheme (and provided that the step set out in Clause 11.2.3 of the Scheme has been completed), the partial release of the Scheme Claims of each Initial Scheme Creditor (as defined in the Explanatory Statement) by an amount equal to the value of the Scheme Consideration (as defined in the Explanatory Statement) received by that Scheme Creditor on the Initial Distribution Date (as defined in the Explanatory Statement) and as of the Final Distribution Date (as defined in the Explanatory Statement) upon completion of all of the steps set out in Clause 11.3.1 of the Scheme (and provided that the step set out in Clause 11.2.3 of the Scheme has been completed), the release in full of all of the remaining Scheme Claims of the Participating Scheme Creditors (as defined in the Explanatory Statement) and all of the Scheme Claims of the Non-Participating Scheme Creditors (as defined in the Explanatory Statement) are, in each case, hereby given full force and effect within the territorial jurisdiction of the United States in accordance with their terms and to the maximum extent enforceable under Hong Kong law;

(f)    as of the Restructuring Effective Date (as defined in the Explanatory Statement), permanently enjoins all Scheme Creditors from:

(i) commencing or continuing in any manner, any Prohibited Proceeding (as defined in the Explanatory Statement) in respect of, arising from or relating to the Notes (as defined in the Explanatory Statement) and/or any Liability (as defined in the Explanatory Statement) arising directly or indirectly pursuant to, under or in connection with any Note Documents (as defined in the Explanatory Statement) provided, however, that such injunction applies only to the extent that commencing or continuing such action is inconsistent with the Scheme, the Sanction Order and/or Hong Kong law; or

(ii) commencing any suit, action or proceeding in the territorial jurisdiction of the United States to settle any dispute which arises out of any provision of the Scheme and/or relating to the Scheme;

(g)     provides that no action taken by the Petitioner in preparing, filing, serving, implementing or otherwise acting in furtherance of the Scheme, the chapter 15 case, or any further order for additional relief in this chapter 15 case, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Petitioner as foreign representative, including without limitation, pursuant to section 1510 of the Bankruptcy Code;

(h)     provides that this Court shall retain jurisdiction with respect to the effect, enforcement, amendment or modification of such order; and

(i)     provides such other and further relief as the Court deems proper and just (together, the "Relief Requested").

## FACTUAL BACKGROUND

11.     Winsway was incorporated in the British Virgin Islands as a limited liability company on September 17, 2007.

12.     Winsway has its place of business in Hong Kong at Hutchison House, 10 Harcourt Road, Hong Kong and has been registered as a non-Hong Kong company in Hong Kong under Part XI of the then Hong Kong Companies Ordinance (Cap. 32 of the Laws of Hong Kong) (now Part 16 of the Hong Kong Companies Ordinance (Cap. 622 of the Laws of Hong Kong)) since September 6, 2010.

13.     The shares of Winsway have been listed on the Main Board of the Hong Kong Stock Exchange since October 11, 2010 (Stock code: 1733).  The Hong Kong share registrar is

Computershare Hong Kong Investor Services Limited of Queen's Road East, Wanchai, Hong Kong.  Winsway convenes its annual general meetings and extraordinary general meetings in Hong Kong.

14.     Winsway's auditor is KPMG in Hong Kong.

15.     Winsway is a holding company.  Its operating subsidiaries hold a substantial portion of their assets in the People's Republic of China.  The assets of these operating subsidiaries include port facilities, commodities stockpiles, logistics parks and railway facilities, which are located in Northeast China, the Sino-Mongolian border and the Sino-Russian Border.

16.     Winsway, with 14 related entities, entered into a New York law-governed indenture dated April 8, 2011 (as amended, the "Indenture") that provided for the issuance of up to US$ 500,000,000 in 8.5% senior notes due in 2016 (the "Notes").  The Notes are supported by guarantees of certain of Winsway's subsidiaries (the "Subsidiary Guarantors") and a charge over the shares of each Subsidiary Guarantor.  Approximately US $309,310,000 in principal amount of the Notes (and approximately US $40,000,000 million of accrued but unpaid interest) currently remains outstanding; these are the subject of the Scheme and the beneficial holders of these Notes are the "Scheme Creditors".   Winsway negotiated the relevant terms of the Scheme with an *ad hoc* committee of the holders of the Notes (the "*Ad Hoc* Committee").  *See* Xinyi Declaration, ¶¶ 25-29, 30, 32, 33, 37, 73.  Legal counsel for the *Ad Hoc* Committee is Akin Gump Strauss Hauer & Feld.  The *Ad Hoc* Committee also engaged Houlihan Lokey (China) Limited as its financial advisor.

17.     On 25 November 2015, Winsway, the Subsidiary Guarantors and the Scheme Creditors comprising the *Ad Hoc* Committee entered into a restructuring support agreement (the "Restructuring Support Agreement"), to which a term sheet reflecting the agreed terms of the

Restructuring was attached. As is detailed in the Xinyi Declaration, Scheme Creditors holding Notes in an aggregate principal amount of approximately US$257,281,000, representing approximately 83% by value of the outstanding principal amount of the Notes, have acceded to the Restructuring Support Agreement to date.  In broad terms, by acceding to the Restructuring Support Agreement, those Scheme Creditors have agreed to support the Restructuring (including by voting their Notes in favour of the Scheme). *See* Xinyi Declaration, ¶ 42.

### BASES FOR RELIEF

**A.**      **Recognition of the Hong Kong Proceeding as a Foreign Nonmain Proceeding and of the Petitioner as its Foreign Representative is Appropriate**

18.       Section 1517 of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign nonmain proceeding if (1) such foreign proceeding is a foreign nonmain proceeding within the meaning of section 1502 of the Bankruptcy Code, (2) the foreign representative applying for recognition is a person or body and (3) the petition meets the requirements of section 1515 of the Bankruptcy Code.  In re Overnight & Control Comm'n of Avánzit, S.A., 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008).  As explained below, the Hong Kong Proceeding, the Petitioner and this Petition satisfy all of the foregoing requirements.

**(i)       The Hong Kong Proceeding is a Foreign Nonmain Proceeding**

19.       The Hong Kong Proceeding is a foreign nonmain proceeding and, as such, satisfies the first condition for the entry of an order recognizing such proceeding under section 1517(a) of the Bankruptcy Code.

20.       As an initial matter, the Hong Kong Proceeding comes within the general definition of "foreign proceeding" set forth in section 101(23) of the Bankruptcy Code, which states as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

21.    Section 101(23) of the Bankruptcy Code requires that a "foreign proceeding" (1) be a collective judicial or administrative proceeding relating to insolvency or adjustment of debt, (2) pending in a foreign country, (3) under the supervision of a foreign court and (4) for the purpose of reorganizing or liquidating the assets and affairs of the debtor.  See 11 U.S.C. § 101(23).  The statute defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."  See 11 U.S.C. § 1502(3).

22.    There should be little doubt that the Hong Kong Proceeding qualifies as a "foreign proceeding" under section 101(23) of the Bankruptcy Code.  The Scheme proposed in this case is between the Debtor and class of creditors (the Scheme Creditors) and is therefore for "adjustment of debt."   The Hong Kong Proceeding is "collective" in the sense that it directly involves all Scheme Creditors and requires approval by a majority in number representing at least 75 per cent (by value) of the claims of the Scheme Creditors present and voting (whether in person or by proxy) at the Scheme Meeting.  The Scheme is intended to benefit creditors (according to their interests) collectively, rather than to benefit any single creditor alone.  The Hong Kong Proceeding is also pending in a foreign country.  Furthermore, the Hong Kong Proceeding is under supervision of the Hong Kong Court.  Additionally, the purpose of the Hong Kong Proceeding is to reorganize the assets and affairs of the Debtor.

23.    In addition, the Scheme is a "foreign nonmain proceeding" as defined by sections 1502(4) and (5).  A "foreign nonmain proceeding," is "a foreign proceeding, other than a foreign

main proceeding, pending in a country where the debtor has an establishment." See 11 U.S.C. § 1502(5); see also 11 U.S.C. § 1517(b)(2) (providing that an order of recognition as a foreign nonmain proceeding shall be entered "if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending").

24.    Section 1502(4) defines a foreign main proceeding as a "foreign proceeding pending in the country where the debtor has the center of its main interests" (frequently abbreviated as "COMI"). While section 1516 creates a presumption that a debtor's registered office (place of incorporation) is its COMI and Winsway's COMI is presumed to be in the British Virgin Islands, the facts do not support the presumption and the presumption may be rebutted by contrary evidence. Section 1516(c) creates no more than a rebuttable evidentiary presumption, which may be rebutted notwithstanding a lack of party opposition." In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 389 B.R. 325, 335 (S.D.N.Y. 2008). Notwithstanding that Winsway is incorporated in British Virgin Islands, it does not conduct business in the British Virgin Islands. Its principal office as holding company for the Group is in Hong Kong where it is listed on the Hong Kong Stock Exchange and where various entities within the Group carry out international trading business. The bulk of the Group's physical operations relate to the supply of coking coal to China through an integrated platform of logistics parks, coal processing plants and road and railway transportation. Consequently, the presumption that Winsway's COMI is in the British Virgin Islands is rebutted by contrary evidence.

25.    Recognition as a foreign nonmain proceeding requires the foreign representative to demonstrate that the proceedings are taking place in a country where the debtor has an "establishment," within the meaning of section 1502(2). 11 U.S.C. § 1517(b)(2). Section

1502(2) defines "establishment" as being "any place of operations where the debtor carries out a nontransitory economic activity."

26.     Winsway has an establishment in Hong Kong.  The following facts set forth in the Xinyi Declaration support indicate that Winsway has an establishment in Hong Kong:

(a)     Winsway is listed on the Hong Kong Stock Exchange.  Xinyi Decl., ¶¶ 7, 52.

(b)     Winsway is registered in Hong Kong as a non-Hong Kong company. Xinyi Decl., ¶¶ 7, 51.

(c)     Six wholly owned subsidiaries of Winsway are incorporated in Hong Kong.  Xinyi Decl., ¶¶ 8, 51.

(d)     Winsway's principal registered office is located in Hutchinson House, 10 Harcourt Road, Hong Kong. Four Winsway employees work at this office on a full-time basis.  The accounting books and records, along with all statutory records, are also maintained at this office. Winsway files income tax returns on an annual basis with the Hong Kong Inland Revenue Department.  Xinyi Decl., ¶ 53.

(e)     Winsway has 20 open bank accounts held at the Hong Kong branches of 6 different banks.  Xinyi Decl., ¶ 54.

(f)     A number of the meetings of Winsway's directors are held in Hong Kong. Over recent years there have been approximately two board meetings in Hong Kong each year.  Two of the current directors, Chuan Lu and Yuk Keung Ng, reside in Hong Kong and are Hong Kong ID holders.  Xinyi Decl., ¶ 55.

(g)     Based on the population of Noteholders identified by Bondcom to date, it is thought that approximately 50% by value of the Notes are held by Noteholders in Hong Kong.  Xinyi Decl., ¶ 56.

(h)     As at February 25, 2016, Winsway had two intra-Group creditors based in Hong Kong; it owed Winsway Coking Coal Logistics Co. Limited HK$326,869.34 (*i.e.*, approximately US$ 42,200, using an exchange rate of 7.75 HK$ to 1 US$) and Winsway Resources (HK) Holdings Ltd approximately HK$316,330,668.92 (*i.e.*, approximately US$ 40.82 million, using an exchange rate of 7.75 HK$ to 1 US$).  Xinyi Decl., ¶ 57.

27.     For all of the reasons set forth above, the Hong Kong Proceeding is, and should be recognized as, the foreign nonmain proceeding in respect of the Debtor.

### (ii)     The Petitioner is a Foreign Representative Who is a Person

28.     The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the foreign representative applying for recognition be a person or body.  See 11 U.S.C. § 1517(a)(2).

29.     The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

30.     Under section 101(41) of the Bankruptcy Code, the "term 'person' includes [an] individual . . . ."  11 U.S.C. § 101(41).

31.     This definition of foreign representative does not require that the individual be appointed by a foreign court or other judicial body.  In re OAS S.A., 533 B.R. 83, 94-95 (Bankr.

S.D.N.Y. 2015); see also In re Vitro S.A.B. de C.V., 701 F.3d 1031, 1047 (5th Cir. 2012), cert. denied, 133 S. Ct. 1862 (2013).  Instead, it is sufficient that the foreign representative be authorized to act "in the context" of a foreign bankruptcy proceeding, such as by resolution of the debtor's board of directors authorizing the representative to commence foreign bankruptcy proceedings on the debtor's behalf.  Vitro, 701 F.3d at 1047, 1049 (affirming recognition of foreign representatives nominated by boards of directors).

32.    The Board of Directors of Winsway passed a resolution appointing Cao Xinyi as Foreign Representative of the Scheme and authorizing her commencement of chapter 15 proceedings in the United States.  This board resolution is sufficient to demonstrate that the Debtor has authorized her to act "in the context" of its forthcoming chapter 15 proceedings.

### (iii)    The Petition Meets the Requirements of Section 1515

33.    The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code.  See 11 U.S.C. § 1517(a)(3).

34.    Here, all of the requirements of section 1515 of the Bankruptcy Code have been met.  First, the Debtor's chapter 15 case was duly and properly commenced by the Petitioner through the filing of this Petition as required by section 1515(a) of the Bankruptcy Code.

35.    Second, evidence of the existence of the Hong Kong Proceeding and the appointment of the Petitioner as foreign representative thereof have been provided to the Court as required under section 1515(b)(1) and (d) of the Bankruptcy Code.

36.    Third, in accordance with section 1515(c) of the Bankruptcy Code, the Petition contains a statement identifying the Hong Kong Proceeding as a foreign proceeding currently pending with respect to the Debtor.

37.    For all of the reasons set forth above, the Petitioner respectfully submits that all of the requirements of section 1517(a) have been satisfied and, thus, that the entry of an order recognizing the Hong Kong Proceeding as a foreign nonmain proceeding is proper.

**B.    The Discretionary Relief Requested is Necessary and Appropriate to Effect the Restructuring and Should be Granted**

38.    Upon recognition of the Hong Kong Proceeding as a foreign nonmain proceeding, it is requested that the Bankruptcy Court grant the forgoing relief, which is necessary to effectuate the purpose of Chapter 15 and protect the assets of Winsway and the interests of its creditors.

39.    Following recognition the Court may grant various forms of relief under section 1521, if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

40.    Section 1521(a) authorizes the Court, at the request of the recognized foreign representative, to grant "any appropriate relief", which may "include"

(1)    staying the commencement or continuation of individual actions concerning the debtor's assets, rights, obligations or liabilities;
(2)    staying execution against the debtor's assets;
(3)    suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor;

Id.

41.    The Court, pursuant to section 1507, may also provide "additional assistance" to a foreign representative under the Bankruptcy Code or other U.S. law. 11 U.S.C. § 1507(a). The legislative history to section 1507 states that the section provides authority for "additional relief" beyond that permitted under sections 1519 to 1521.[2] In exercising discretion to grant relief under section 1507, courts are guided by the standards set forth in section 1507, which provides that:

---

[2]    H.R. Rep. No. 109-31, pt. I, 109th Cong., 1st Sess. 109 (2005).

In determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure—

(1)    just treatment of all holders of claims against or interests in the debtor's property;

(2)    protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3)    prevention of preferential or fraudulent dispositions of property of the debtor;

(4)    distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and

(5)    if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507(b).

42.    Additionally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

43.    For the reasons that follow, the Petitioner urges this Court to exercise its discretion under sections 105(a), 1507 and 1521 to grant the Relief Requested beyond recognition of the Hong Kong Proceeding as a foreign nonmain proceeding (and of the Petitioner's position as "foreign representative" in respect thereof).

### (i)    Discretionary Relief Is Appropriate Under Section 1521

44.    The Relief Requested, which the Court may grant in its discretion, is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code, and is a necessary and contractual precondition to effect the Restructuring and the fair administration of the Scheme. If granted, such relief would promote all of the legislatively enumerated objectives of section 1501(a).

45.    Fair and efficient administration of the Restructuring that protects all parties in interest requires that all Scheme Creditors be bound by the terms of the Scheme and other Restructuring Documents as approved and made effective by the Hong Kong Court and the laws

of Hong Kong.   "The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail."   Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 714 (2d Cir. 1987); see also Cunard S.S. Co. v. Salen Reefer Servs. AB, 773 F.2d 452, 458 ("The granting of comity to a foreign proceeding enables the assets of a debtor to be dispersed in an equitable, orderly and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").   Over a hundred years ago, the Supreme Court recognized the necessity of giving effect to foreign schemes of arrangement in order to further these goals, reasoning that

> [u]nless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail.  All home creditors can be bound.  What is needed is to bind those who are abroad.  Under these circumstances the true spirit of international comity requires that schemes of this character, legalized at home, should be recognized in other countries.

Canada S. Ry. Co. v. Gebhard, 109 U.S. 527, 539 (1883).

46.      Here, it is possible that Scheme Creditors or other entities could seek to obtain judgments in the United States against Winsway or others involved in the Restructuring as effected by the Scheme and Restructuring Documents in order to obtain more than the *pro rata* treatment to which they are entitled pursuant to the terms of the Scheme.   If such Scheme Creditors could circumvent the Scheme and other Restructuring Documents by commencing actions in the United States, Winsway and others involved in the Restructuring would be required to defend such proceedings and deplete the resources of the restructured business and prejudice its reorganized value.   The Relief Requested is required to prevent individual creditors acting to frustrate the purposes of the Scheme, the foremost of which is the fair and efficient administration of the Restructuring in order to maximize value for all creditors.

47.     The Scheme is the most important in a series of steps to effect the overall
Restructuring.   The Restructuring is in the best interests of Winsway, and its stakeholders
(including the Scheme Creditors).

### (ii)     The Discretionary Relief Requested Meets the Standards for Injunctive Relief

48.     To the extent the standards for injunctive relief apply in this chapter 15 case to the
Relief Requested, those standards are met.   Permanent injunctive relief generally is appropriate
where a movant can show a likelihood of irreparable harm.   Irreparable harm to an estate exists
where the orderly determination of claims and the fair distribution of assets are disrupted.   See
Victrix, 825 F.2d at 713-14 ("The equitable and orderly distribution of a debtor's property
requires assembling all claims against the limited assets in a single proceeding; if all creditors
could not be bound, a plan of reorganization would fail."); see also In re Garcia Avila, 296 B.R.
95, 114 (Bankr. S.D.N.Y. 2003) ("irreparable harm is present when the failure to enjoin local
actions will disrupt the orderly reconciliation of claims and fair distribution of assets in a single,
centralized forum" (quoting Collier on Bankruptcy ¶ 304.05, at 304-21 (15th ed. Rev. 2003)); In
re MMG LLC, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("[I]rreparable harm exists whenever
local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to
the detriment of other creditors."); In re Rubin, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993)
("[T]here seems to be little dispute regarding the notion that the premature piecing out of
property involved in a foreign liquidation proceeding constitutes irreparable injury . . . [.]"); In re
Petition of Brierley, 145 B.R. 151, 168 (Bankr. S.D.N.Y. 1992) ("Harm to the estate exists from
the failure to grant injunctive relief in the form of disruption of an orderly determination of
claims and the fair distribution in a single case."); In re Gercke, 122 B.R. 621, 626 (Bankr.
D.D.C. 1991) ("Harm to the estate also exists in the form of disruption of an orderly

determination of claims and the fair distribution in a single case . . . [.]"); In re Lines, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ("[T]he premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.").

49.     The Supreme Court, the Court of Appeals for the Second Circuit and several decisions in this District recognize a federal court's authority to grant permanent injunctive relief to enforce foreign plans and discharges.  See, e.g., Can. S. Ry. Co. v. Gebhard, 109 U.S. at 539 (concluding that actions brought in the United States by plaintiff bondholders who did not participate in the Canadian insolvency proceedings of the bond issuer could not be maintained, even though the bonds were payable in New York); The Argo Fund Ltd. v. Bd. of Dirs. of Telecom Arg., S.A., as Foreign Rep. of Telecom Arg., S.A. (In re Bd. of Dirs. of Telecom Arg., S.A.), 528 F.3d 162 (2d Cir. 2008) (concluding that bankruptcy court did not abuse its discretion in granting full force and effect to Argentine plan and approval order in the United States); In re Metcalfe & Mansfield Alt. Invs., 421 B.R. 685 (Bankr. S.D.N.Y. 2010) (recognizing, enforcing and granting permanent injunctive relief in chapter 15 case in respect of foreign plan that included protection for third party releases in Canadian scheme); In re Petition of Ho Seok Lee, 348 B.R. 799 (Bankr. W.D. Wash 2006) (granting permanent injunctive relief in a chapter 15 case as an "effective mechanism" to prevent creditor from seeking to recover amounts in excess of what was provided under Korean plan of reorganization); In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd., 238 B.R. 25 (Bankr. S.D.N.Y. 1999) (extending injunction of Bermuda court to prohibit any creditor from commencing or continuing actions or proceedings in the United States contrary to the Bermudan plan in a case under former section 304); Brierley, 145 B.R. at 168-69 (granting permanent injunction under former section 304 prohibiting suits against the foreign debtor, its property or its administrators arising out of claims which could have been asserted

prior to the filing of the ancillary petition); see also Oui Fin. LLC v. Dellar, No. 12-cv-07744-RA, 2013 WL 5568732, (S.D.N.Y. Oct. 9, 2013) (applying doctrine of comity under New York law to dismiss complaint seeking payment from debtor and non-debtor guarantor in contravention of restructuring plan approved in French *procédure de sauvegarde*).

50.    Such relief has been granted in other chapter 15 cases without reported decisions. See, e.g., In re "BTA Bank" JSC, No. 12-13081 (Bankr. S.D.N.Y. Jan. 3, 2013); In re JSC BTA Bank, No. 10-10638, (Bankr. S.D.N.Y. Jan. 6, 2011); In re Hellas Telecom. (Luxembourg) V, No. 10-13651 (Bankr. D. Del. Dec. 13, 2010); Highlands Insurance Co. (U.K.) Limited, No. 07-13970 (MG) (Bankr. S.D.N.Y. Aug. 18, 2009); In re Gordian RunOff (UK) Ltd., f/k/a GIO (UK) Ltd., No. 06-11563 (RDD) (Bankr. S.D.N.Y. Aug. 29, 2006); In re Castle Holdco 4, Limited, No. 09-11761 (REG) (Bankr. S.D.N.Y. May 7, 2009); Europaische Rueckversicherungs-Gesellschaft in Zurich, No. 06-13061 (REG) (Bankr. S.D.N.Y. Jan. 22, 2007); Petition of Lloyd (In re La Mutuelle du Mans Assurances IARD, U.K. Branch), No. 05-60100 (BRL), 2005 WL 3764946 (Bankr. S.D.N.Y. Dec. 7, 2005).

51.    If the Restructuring as contemplated by the Scheme and other Restructuring Documents is not given effect in the United States, there is a risk that dissident Scheme Creditors could bring proceedings in the United States against Winsway, the Subsidiary Guarantors and/or other parties protected by the Scheme and the Restructuring Documents based upon the Indenture's provisions consenting to jurisdiction in New York.  Unless this Court grants the Requested Relief, irreparable harm could come to the integrity of the Scheme and the Restructuring to the detriment of Winsway and its creditors.

### (iii)  Granting the Relief Requested Will Leave Creditors and Other Parties in Interest "Sufficiently Protected" and Will Not Be "Manifestly Contrary to the Public Policy of the United States"

52.     The Relief Requested under section 1521 is founded on the Congressional mandate to cooperate with foreign proceedings and foreign representatives to promote the goals of chapter 15.  See 11 U.S.C. § 1525(a) ("Consistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee.").   As shown above, such relief is "appropriate" as that term is used in section 1521 because it is necessary to ensure the success of the Hong Kong Proceeding, the Scheme and the Restructuring.  As noted above, however, the Court may grant such relief only if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).

53.     The Bankruptcy Code does not define "sufficient protection."  A determination of sufficient protection "requires a balancing of the respective parties' interests."   In re AJW Offshore, Ltd., 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013) (citing SNP Boat Serv. S.A. v. Hotel Le St. James, 483 B.R. 776, 784 (S.D. Fla. 2012); In re Qimonda AG Bankr. Litig., 433 B.R. 547, 556–58 (E.D. Va. 2010); CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V., 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012)); Tri–Cont'l Exch., 349 B.R. at 637; Guide ¶ 161 ("The idea underlying article 22 is that there should be a balance between relief that may be granted to the foreign representative and the interests of the persons that may be affected by such relief.  This balance is essential to achieve the objectives of cross-border insolvency legislation."); see also In re Sivec SRL, 476 B.R. 310, 323 (Bankr. E.D. Okla. 2012) (citing Guide); In re Lee, 472 B.R. 156, 180-81 (Bankr. D. Mass. 2012) (same); In re Int'l Banking Corp., 439 B.R. 614, 626-27 (Bankr. S.D.N.Y. 2010) (same). Section 1522 "gives the bankruptcy court broad latitude to mold

relief to meet specific circumstances." Int'l Banking at 626-27 (internal quotations and citations omitted); Atlas Shipping, 404 B.R. at 740.

54.     Here, all creditors are "sufficiently protected" by the treatment and protections afforded them by the Scheme, the Restructuring Documents and the process by which they will be approved, because all Scheme Creditors will be treated similarly; U.S. claimants are not subject to undue inconvenience or prejudice, and the process and protection in the Hong Kong Proceeding, as well as the anticipated distribution of consideration under the Scheme, are substantially similar to what might occur in a reorganization under U.S. law.   See Atlas Shipping, 404 B.R. at 740.   Further, the Relief Requested "would assist in the efficient administration of this cross-border insolvency proceeding, and it would not harm the interests of [Winsway] or [its] creditors." In re Grant Forest Prods., Inc., 440 B.R. 616, 621 (Bankr. D. Del. 2010).  That certain creditors "may be denied an advantage over the debtor's other … creditors is not a valid reason to deny relief to the foreign representative." Atlas Shipping, 404 B.R. at 742.

55.     A court may deny a request for any relief that would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.  The legislative history indicates that the "public policy" exception is narrow, applying only to the "most fundamental policies of the United States." H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 109 (2005).

56.     Most of the Requested Relief is nearly identical to the relief that would be available under chapter 11 upon confirmation of a plan of reorganization.   However, in considering whether to grant relief, it is not necessary that the result achieved in the Hong Kong Proceeding be identical to that which would be had in the United States. Metcalfe & Mansfield, 421 B.R. at 697 ("The relief granted in the foreign proceeding and the relief available in a U.S. proceeding need not be identical").  It is sufficient if the result is "comparable" or "similar."

Vitro, 701 F.3d at 1044 (citing cases).  Furthermore, the mere fact that a foreign representative requests relief that would be available under the law of the foreign proceeding, but not in the United States, is not grounds for denying comity.  See In re Condor Ltd., 601 F.3d 319, 327 (5th Cir. 2010).

57.     In this case, strong grounds exist under Hong Kong law to sanction the Scheme (if it has been approved by the requisite majority of the Scheme Creditors), including the release of the Subsidiary Guarantors:   the Scheme cannot function without such releases.   If Scheme Creditors could simply press their discharged Scheme Claims against the Subsidiary Guarantors, which include the operating companies, then nothing would have been achieved, for Winsway is an investment holding company (Xinyi Declaration ¶ 8) whose business is to hold direct or indirect equity interests in those Subsidiary Guarantors.  If the Subsidiary Guarantors would have reimbursement and/or subrogation claims against Winsway, then its estate would be depleted to the same extent as they satisfy the Noteholder claims against it.  More importantly, the enterprise value of the Group would likely be significantly reduced, because the guarantee debts of Winsway and the Group's other operating Subsidiary Guarantors would be–at best–difficult and expensive to restructure outside of the Scheme framework, and given the urgency of its financial situation, Winsway might risk becoming subject to liquidation proceedings, potentially value-destroying alternatives for creditors and other stakeholders.  Considering these factors, the non-Debtor releases in the Scheme are an essential part of a pragmatic, balanced and extensively negotiated restructuring solution that maximizes enterprise value without undue prejudice to the rights of creditors.  Accordingly, the Petitioner expects that the Hong Kong Court will sanction the Scheme (if it has been approved by the requisite majority of the Scheme Creditors), including the releases of the Subsidiary Guarantors, as fair and reasonable.

58.     There is precedent under chapter 15 to enforce a foreign insolvency plan that includes nonconsensual third party releases.  In Metcalfe & Mansfield, Judge Glenn granted such a request.    There, the monitor in a proceeding under Canada's Companies' Creditors Arrangement Act sought recognition and an order from the bankruptcy court enforcing a Canadian court sanctioned scheme that included "a very broad third party release."  Id. at 687-88.  Although the Bankruptcy Court was skeptical that the non-debtor release and injunction provisions could be approved in a chapter 11 case, it held that the inquiry in a chapter 15 case was very different:

> This Court is not being asked to approve such provisions in a plenary case; rather, the Court is being asked to order enforcement of provisions approved by the Canadian courts.  The correct inquiry, therefore, is whether the foreign orders should be enforced in the United States in this chapter 15 case.  As explained below, enforcement of foreign judgments and comity in chapter 15 cases strongly counsel approval of enforcement in the United States of the third-party non-debtor release and injunction provisions included in the Canadian Orders, even if those provisions could not be entered in a plenary chapter 11 case.

Metcalfe & Mansfield, supra, 421 B.R. at 696.

59.     The Metcalfe & Mansfield court concluded that "[p]rinciples of comity in chapter 15 cases support enforcement of the Canadian Orders in the United States whether or not the same relief could be ordered in a plenary case under chapter 11."  Id. at 700.  Similarly here, principles of comity support giving effect to the release of the Subsidiary Guarantors.  The Hong Kong Court's exercise of jurisdiction over Winsway and its Scheme is proper.  As to procedural fairness, the Petitioner submits that the steps undertaken and to be undertaken before the Scheme and the Restructuring Documents can become effective sufficiently conform to American notions of due process.

60.     The steps followed, and to be followed, in the Hong Kong Proceeding (which are detailed in the Xinyi Declaration) demonstrate an adequate process.  Winsway has given (or, in

the case of certain newspaper advertisements that have not yet been published, will give) Scheme

Creditors more than 21 days' notice of the Scheme Meeting by the following methods:

(1)    by notice on the scheme website (www.bondcom.com/winswayscheme);

(2)    by publishing information through the Depository Trust Company (the central depository where the notes are registered)

(3)    by notice *via* electronic mail from Bondcom to each Scheme Creditor who has notified or notifies Bondcom of their valid email address;

(4)    by notice published on the Hong Kong Stock Exchange Announcements page for Winsway;

(5)    by notice published on the section titled "Company Information – Company Announcements" on the website of the Singapore Exchange; and

(6)    by advertisement in the BVI Gazette, the BVI Beacon, South China Morning Post, the Hong Kong Economic Times, the China Business News (第一财经日报) (translated into the Chinese language), the WALL STREET JOURNAL and the international editions of the WALL STREET JOURNAL and the FINANCIAL TIMES.

61.    This formal notice period is consistent with usual practice in the context of schemes of arrangement.  Further, given that the Restructuring Support Agreement, to which over 83% by value of the Scheme Creditors have acceded and which appended a term sheet outlining the key terms of the Restructuring, has been available for Scheme Creditors to review on the scheme and company websites since 25 November 2015, the formal notice period is more than reasonable.

62.    Each of the Scheme Creditors will have the opportunity to attend the Scheme Meeting, ask questions and raise concerns in respect of the Scheme, and ultimately to vote against it in person or by proxy if it wishes to do so (including if it believes the Scheme not to serve its best interests).

63.     As noted above, in order for the Scheme to become binding, it must also be approved by the Hong Kong Court following the Scheme Meeting (assuming the requisite majority votes in favor have been obtained) at the Sanction Hearing.  All Scheme Creditors will have another opportunity to raise objections to the Scheme and submit evidence at the Sanction Hearing.

64.     If the Hong Kong Court approves the Scheme, the Scheme Sanction Order will be appealable by Scheme Creditors (with the leave of the Hong Kong Court).

65.     United States and other non-Hong Kong creditors have the same rights to participate in the Hong Kong Proceeding as Hong Kong creditors.

66.     The procedures followed, and to be followed, regarding notice, information, voting, and opportunity to object and participate in the Hong Kong Proceeding are similar to those employed in chapter 11 cases in the United States.

67.     In addition to the matters set forth above, the Scheme has the following features that ensure the fairness of the Scheme:

(a)     Since there is only one (1) class of creditors, all Scheme Creditors will receive the same treatment;

(b)     acceptance of the Scheme requires approval by a majority in number representing at least 75 per cent (by value) of the claims of the Scheme Creditors present and voting (whether in person or by proxy) at the Scheme Meeting;

(c)     the rights of the Scheme Creditors with respect to the Scheme are identical (for completeness, those Scheme Creditors who agreed to be bound by the Restructuring Support Agreement within a specified timeframe are entitled to receive a consent fee on completion of the Restructuring but this is not a term of the Scheme and the relevant amount is de minimis);

(d)     each Scheme Creditor will be entitled to receive a *pro rata* share (by value) of the total consideration under the Scheme, subject only to the requirement that it submits claim documents to the Information Agent on or before the designated bar date, which will fall three months after the Restructuring Effective Date; and

     (e)     the rights of creditors of Winsway other than the Scheme Creditors will not be impaired.

68.    In addition to the notice provided in the Hong Kong Proceeding, the Petitioner intends to take further steps to provide notice of the recognition hearing to be conducted by this Court.  This will ensure that the interests of affected creditors are sufficiently protected.  As is common with financial instruments such as the Notes, the identity of some holders is unknown, since global notes are registered in the name of a central depositary and the participants are usually nominees for the beneficial holders.  Pursuant to Bankruptcy Code § 1514(a), this Court may order that appropriate steps be taken to notify any creditor whose address is not yet known.  To provide notice of this proceeding, the Petitioner proposes to utilize the following communication methods, which are typically used to disseminate information to beneficial holders; (a) publishing the Petition and notice of the recognition hearing on the Scheme website and the Debtor's website ; (b) publishing the Petition and a notice of the recognition hearing through the announcement systems of the Depository Trust Company; (c) causing the Information Agent to electronically transmit a copy of the Petition and a notice of the recognition hearing to any person that has identified itself as a holder of the Notes and provided an email address for communications; (d) publishing the Petition and a notice of the recognition hearing on the HKEX Announcements page and the SGX Announcements page for the Debtor; and (e) publishing a notice of the recognition hearing in THE WALL STREET JOURNAL (National Edition).

69.    Accordingly, the Petitioner submits that the standards required to "sufficiently protect" creditors and other parties in interest have been met, that grant of the Requested Relief would not be manifestly contrary to the public policy of the United States, and that the Requested Relief can and should therefore be granted.

       **(iv)**    **Granting the Relief Requested Meets the Traditional Standards of "Comity" Under Section 1507(b)**

70.    While satisfaction of the standards set forth in section 1521 and 1522 would appear on their face to be sufficient to grant the discretionary portions of Relief Requested, to the extent the Court holds that section 1507(a) is a necessary predicate to granting such relief, the Petitioner submits that granting the relief meets the standards of comity set forth under section 1507(b) of the Bankruptcy Code.

71.    The first factor under section 1507(b) is whether the additional assistance contemplated will reasonably assure "just treatment of all holders of claims against or interests in the debtor's property."  Under former section 304(c) jurisprudence, courts uniformly held that this requirement is satisfied where the foreign insolvency law provides a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among all of the estate's creditors in one proceeding.  See, e.g., The Bank of New York v. Treco (In re Treco), 240 F.3d 148, 158 (2d Cir. 2001); In re Culmer, 25 B.R. 625, 629 (Bankr. S.D.N.Y. 1992).  The Scheme Creditors consist of the holders of beneficial interests under a single debt instrument, the Indenture.  The Scheme Creditors have equal rights of participation in the Hong Kong Proceeding.

72.    The second enumerated factor, "protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding," 11 U.S.C. § 1507(b)(2), is satisfied where creditors are given adequate notice of timing and procedures for filing claims, and such procedure does not create any additional burdens for a foreign creditor to file a claim.  See, e.g., Treco, 240 F.3d at 158; In re Petition of Hourani, 180 B.R. 58, 68 (Bankr. S.D.N.Y. 1995).  Although Winsway through the Restructuring Support Agreement solicitation process does, *via* its agent Bondcom, have a list of contact details for the

beneficial holders of approximately 83% of the outstanding principal of the Notes, it does not have a comprehensive schedule of the identities and contact details of all of the Scheme Creditors.  It has, therefore, taken measures reasonably calculated to effect adequate notice by delivering notice of (and detailed information relating to) the Scheme, the Scheme Meeting, the procedure for filing claims, voting and participating in the Scheme process, etc. to the depositary through the Information Agent for distribution to Account Holders and on to the Scheme Creditors through the regular channels by which notices are normally delivered.  In addition, as discussed above, Winsway has taken pains to publicize the Scheme and the Hong Kong Proceeding through websites with links to relevant information, disseminated notices to the depositary, has published or will shortly publish newspaper advertisements in various international financial publications, and has made hard copies of the relevant documents available for inspection at the offices of its legal advisers in Hong Kong and the British Virgin Islands.  Moreover, there is no prejudice to claim holders in the United States since Scheme Creditors in the United States and Scheme Creditors in other jurisdictions (including Hong Kong) are treated identically.

73.    Section 1507(b)(3) requires that the "additional assistance" being considered will reasonably assure prevention of preferential or fraudulent dispositions of property of Winsway. This consideration has little relevance here since the Scheme does not contemplate a transfer of any property other than cash payments.  Winsway is the parent of the Group whose only business activities consist of issuing, and making payments in respect of, the Notes (as well as maintaining its listed status).  Since the Scheme will only affect the Notes, the only Scheme Creditors are the holders of the Notes.  Therefore, absent from this case are the myriad trade and

other creditors whose presence in other circumstances might give rise to concerns about preferences or fraudulent transfers.

74.     Section 1507(b)(4) requires that the distribution of Winsway's property substantially accords with the order of distribution available under the Bankruptcy Code.  See, e.g., In re Gee, 53 B.R. at 904; Haarhuis v. Kunnan Enters., Ltd., 177 F.3d 1007 (D.C. Cir. 1999) (Taiwanese distribution system was substantially in accordance with U.S. law because priority afforded to certain classes of claims as under the Bankruptcy Code).  This merely requires that the "foreign distribution scheme be 'substantially in accordance' with United States bankruptcy law; it does not have to mirror the United States distribution rules."  In re Ionica, 241 B.R. 829, 836 (Bankr. S.D.N.Y. 1999) (citations omitted).  As noted above, under Winsway's Scheme priority, both in right of payment and in distribution of proceeds, is respected in substantially the same manner as it would be treated under the Bankruptcy Code.

75.     Section 1507 of the Bankruptcy Code requires that any determination of a request for assistance under chapter 15 be "consistent with principles of comity . . . ."  11 U.S.C. § 1507. Here, principles of comity support the grant of the relief requested.  Federal courts generally extend comity "whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy."  Victrix, 825 F.2d at 713 (citing Hilton v. Guyot, 159 U.S. 113, 202-03 (1895)); see also Cunard, 773 F.2d at 456-57; Atlas Shipping, 404 B.R. at 733.  As noted above, particularly in the bankruptcy context, "American courts have long recognized the need to extend comity to foreign bankruptcy proceedings," because "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail."  Victrix, 825 F.2d at 713-14.  Other courts have

similarly underscored the importance of extending comity to foreign bankruptcy proceedings. Finanz AG Zurich v. Banco Economico S.A., 192 F.3d 240, 246 (2d. Cir. 1999); Maxwell Commc'ns Corp., 93 F.3d at 1048; Cunard, 773 F.2d at 458; Oui Fin., 2013 WL 5568732, at * 5 (comity under New York law should normally be extended to foreign restructuring proceedings if the foreign court is of competent jurisdiction, and the proceedings are procedurally fair and do not contravene public policy).   Comity should be withheld only when recognition of foreign proceedings would be adverse to the public policy interests of the United States.   See Somportex, Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir. 1971); Cunard, 773 F.2d at 457.   American courts have consistently recognized the interests of foreign countries in winding up the affairs of their own businesses.   See Cunard, 773 F.2d at 458 (and cases cited therein); In re Gee, 53 B.R. at 901 ("Particularly where the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, exceptions to the doctrine of comity are narrowly construed.") (citing Clarkson Co. v. Shaheen, 544 F.2d 624, 630 (2d Cir. 1976)).   As discussed above, because the Scheme is not contrary or prejudicial to the interests of creditors in the United States, the doctrine of comity supports the granting of permanent relief enforcing the Scheme under both section 1507 and section 1521 of the Bankruptcy Code in this case.

76.     Accordingly, the Requested Relief should be granted.

## NOTICE

77.     Notice of this Petition has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) Bondholder Communications Group LLC, as the Information Agent, 30 Broad Street, 46th Floor, New York, NY 10004, for distribution to the Scheme Creditors; (ii) Deutsche Bank Trust Company Americas, Trust & Securities Services, as Paying and Transfer Agent, 60 Wall Street, Mailstop NYC 60-2710, New York, New York 10005, (iii) Akin Gump Strauss Hauer & Feld, as counsel for the *Ad Hoc* Committee, of Units

1801-08 & 10, 18th floor, Gloucester Tower, The Landmark, 15 Queen's Road Central, Central,

Hong Kong; (iv) Houlihan Lokey (China) Limited, as the financial advisor to the *Ad Hoc*

Committee, of 2106 Alexandra House, 18 Chater Road, Central, Hong Kong; and (v) all parties

required to be given notice under Bankruptcy Rule 2002(q)(1) of which the Petitioner is aware.

78.     The Petitioner submits that no other or further notice need be provided.

## <u>NO PRIOR REQUEST</u>

79.     No previous request for the relief requested herein has been made to this or any

other court.

WHEREFORE, for the reasons set forth herein, the Petitioner respectfully requests that

this Court enter an order (i) granting the Relief Requested herein and (ii) granting the Petitioner

and Debtor such other and further relief as the Court deems proper and just.

Dated: New York, New York
     April 6, 2016

<div style="margin-left:40%">

REED SMITH LLP
/s/ *Michael J. Venditto*
   Michael J. Venditto
   Sarah K. Kam
599 Lexington Avenue
New York, NY 10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450

*Attorneys for Cao Xinyi, as Petitioner and
Foreign Representative*

</div>

## **VERIFICATION**

CAO XINYI hereby declares:

1.      I have been appointed foreign representative by the board of directors of the

Winsway Enterprises Holdings Limited.

2.      I have read this Verification and the foregoing Petition and I am informed and

believe that the factual allegations contained therein are true and correct.

3.      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed in Beijing, P.R.C. on the  6th   day of April, 2016.

_____

CAO XINYI

## EXHIBIT A

(Copy of the Hong Kong Court's order)

HCMP 453 / 2016

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

MISCELLANEOUS PROCEEDINGS NO. 453 OF 2016



22 MAR 2016

IN THE MATTER OF Sections 670(1), 671 of the Companies Ordinance, Chapter 622 of the Laws of Hong Kong.

and

IN THE MATTER of Winsway Enterprises Holdings Limited

**BEFORE THE HONOURABLE MR. JUSTICE HARRIS IN CHAMBERS**

**O R D E R**

**UPON** the application of Winsway Enterprises Holdings Limited (the **Applicant and Company**) by Ex Parte Originating Summons filed on 26 February 2016

**AND UPON** reading the Affirmation of Cao Xinyi filed on 26 February 2016 with the exhibits referred to therein, the Affirmation of Raughley Daniel Nuzzi filed on 26 February 2016 with the exhibits referred to therein, the Affidavit of Gerard Salvatore DiFiore filed on 26 February with the exhibits referred to therein, the Affidavit of Eloise Kate Fardon filed on 26 February 2016 with the exhibits referred to therein, the First Affirmation of Michael John Fosh filed on 10 March 2016 with the exhibits referred to therein, the Affidavit of Robert Charles John Foote filed on 10 March 2016 with the exhibits referred to therein, the Second Affirmation of Cao Xinyi filed on 15 March 2016, the Second Affidavit of Eloise Kate Fardon filed on 15 March 2016 with the exhibits referred to therein

**AND UPON** hearing Senior Counsel for the Company

1

**AND UPON** the basis that all capitalised terms not otherwise defined in this Order shall have the meaning given to them in the explanatory statement for the Scheme (the Explanatory Statement)

## IT IS ORDERED THAT:

1.  The Applicant does (subject to convening orders in substantially the same terms as these orders being made by the Commercial Division of the Eastern Caribbean Supreme Court in respect of the inter-conditional BVI scheme of arrangement proposed to be made between the Company and certain of its creditors) convene a meeting of certain creditors of the Company (**Scheme Meeting**) for the purpose of considering and if thought fit approving, with or without modification, the Scheme proposed to be made between the company and certain of its creditors as defined and provided for in the composite Scheme document exhibited to the supporting Affirmation filed herein (**Scheme Creditors**);

2.  The Scheme Meeting of the Scheme Creditors of the Company shall be held at the offices of Stephenson Harwood, 18th Floor, United Centre, 95 Queensway, Hong Kong, on 3 May 2016 at 10.00 a.m. (Hong Kong time);

3.  The Applicant shall give Scheme Creditors not less than twenty one (21) clear days' notice of the Scheme Meeting in accordance with the following paragraphs of this Order;

4.  The notice convening the Scheme Meeting (**Notice**) shall state that copies of the printed composite Scheme document containing the Scheme and the Explanatory Statement required to be furnished pursuant to section 671 of the Companies Ordinance (Cap 622) together with forms of proxy can be obtained free of charge by any person entitled to attend the Scheme Meeting, during usual business hours on any day (other than Saturdays, Sundays or statutory holidays in Hong Kong) prior to the day appointed for the Scheme Meeting, from Stephenson Harwood, 18th Floor, United Centre, 95 Queensway, Hong Kong and Walkers at 171 Main Street, PO Box 92, Road Town, Tortola, VG1110, British Virgin Islands upon reasonable prior notice given to those firms, and shall be substantially in the form set out in Appendix 4 to the Explanatory Statement (as updated in Appendix A to this Order);

5.   The form of the Notice of Scheme Meeting as attached to this Order marked "Appendix A" is approved.

6.   Notice of the Scheme Meeting shall be circulated to Scheme Creditors:

   (a)   by notice on the scheme website (www.bondcom.com/winswayscheme)

   (b)   by publishing information through the announcement systems of the Depository Trust Company (the central depository where the notes are registered);

   (c)   by notice via electronic mail from the Information Agent to each Scheme Creditor who has notified or notifies the Information Agent of their valid email address; and

   (d)   by notice published on the HKEX Announcements page for the Company;

   (e)   by notice published on the SGX Announcements page; and

   (f)   by advertisement in the *(BVI Official Gazette, BVI Beacon, South China Morning Post, the Hong Kong Economic Times)* (translated into traditional Chinese*), (the China Business News (第一财经日报)) (*translated into simplified Chinese*), (the Wall Street Journal)* and the international editions of *(the Wall Street Journal* and *the Financial Times)*.

7.   When providing notice of the Scheme Meeting in accordance with the foregoing paragraphs, the Applicant shall also provide a link to enable the Scheme Creditors to access electronic copies of the following documents:

   (a)   the composite Scheme document (substantially in the form set out at Appendix 2 of the Explanatory Statement);

   (b)   the Explanatory Statement (substantially in the form exhibited to the supporting Affirmation and as updated and amended at the hearing on 21 March 2016); and

   (e)   the Solicitation Packet (substantially in the form set out in Appendix 5 to the Explanatory Statement);

8.   The Applicant shall give the instructions and guidance for voting at the Scheme Meeting set out in the Solicitation Packet (in the form or substantially the same form as set out in

Appendix 5 of the Explanatory Statement);

9.   The Account Holder Letter being in the form or substantially in the form set out in Schedule 1 to the Solicitation Packet set out in Appendix 5 to the Explanatory Statement is approved for use at the Scheme Meeting.

10.  For the purposes only of voting at the Scheme Meeting, the Chairperson shall be at liberty to accept incomplete or late Account Holder Letters at her discretion after the time and date fixed in the notice for submission of such forms, provided that the Chairperson considers that sufficient proof has been provided by the relevant Scheme Creditor that it is a Scheme Creditor.

11.  The Chairperson for the Scheme Meeting shall be Cao Xinyi of c/- Room 12-6, 12th Floor, Tower B, Guanghualu SOHO II, No.9, Guanghua Road, Chaoyang District, Beijing, PRC,  CEO of the Company or failing her a suitable alternative nominated by the Company;

12.  The Chairperson shall report the result of the Scheme Meeting to this Honourable Court as soon as reasonably practicable after the date of the Scheme Meeting;

13.  The substantive hearing of the Petition at which the Court will determine whether or not to sanction the Scheme shall be heard at 10:00am (Hong Kong time) on 17 May 2016 (before the Honourable Mr Justice Harris);

14.  The Scheme Creditors shall vote as one class;

15.  There be liberty to apply generally.

Dated this 21st day of March 2016.

Registrar

4

## APPENDIX A

**NOTICE OF SCHEME MEETING**

**IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE**

**MISCELLANEOUS PROCEEDINGS NO. 453 OF 2016**

**IN THE MATTER OF Sections 670(1), 671 of the
Companies Ordinance, Chapter 622 of the Laws of
Hong Kong**

**and**

**IN THE MATTER OF Winsway Enterprises Holdings
Limited**

**IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
VIRGIN ISLANDS**

**COMMERCIAL DIVISION**

**CLAIM No. BVI HCV(COM) 31 of 2016**

**IN THE MATTER OF WINSWAY ENTERPRISES HOLDINGS LIMITED
AND IN THE MATTER OF SECTION 179A OF THE BVI BUSINESS
COMPANIES ACT 2004**

Terms defined in this Notice of Scheme Meeting have the same meanings as in the proposed scheme of arrangement under section 673 and 674 of the Companies Ordinance (Cap 622) of Hong Kong between Winsway Enterprises Holdings Limited (the "**Company**") and the Scheme Creditors (the "**Hong Kong Scheme**"), and the proposed scheme of arrangement under section 179A of the BVI Business Companies Act 2004 between the Company and the Scheme Creditors (the "**BVI Scheme**").

NOTICE IS HEREBY GIVEN that, by orders dated 21 March 2016 and [●] (the "**Orders**") made in the above matters, the High Court of the Hong Kong Special Administrative Region and the Commercial Division of the Eastern Caribbean Supreme Court (the "**Courts**") have directed that a meeting (the "**Scheme Meeting**") be convened for the purpose of considering and, if thought fit, approving (with or without modification) the Hong Kong Scheme and the BVI Scheme (together the "**Schemes**").

The Scheme Meeting will be held at the offices of Stephenson Harwood, 18th Floor, United Centre, 95 Queensway, Admiralty, Hong Kong, at 10.00 a.m. on Tuesday 3 May 2016 (Hong

Kong time) / 10:00 p.m. on 2 May (BVI time).  All Scheme Creditors are requested to attend at such place and time either in person or by proxy.

Scheme Creditors may vote in person at the Scheme Meeting or they may appoint another person, whether a Scheme Creditor or not, as their proxy to attend and vote in their place. Each Scheme Creditor or his/her proxy will be required to register their attendance at the Scheme Meeting prior to its commencement.  Registration will commence at 8.00 am (Hong Kong time) on the date of the Scheme Meeting and any Scheme Creditor who wishes to attend should produce a duplicate copy of the Account Holder Letter by 9.00am (Hong Kong time) on the date of the Scheme Meeting.

It is requested that Account Holder Letters are completed and submitted to Bondholder Communications Group (Attention of Wendy Cole), 30 Broad Street, 46th Floor, New York, NY 10004 (fax: +1 212 437 9827; email: wcole@bondcom.com) by not later than 5.00 pm (New York time) on Friday 29 April 2016 (5.00pm BVI time on Friday 29 April 2016 / 5.00am HK time on 30 April 2016) in accordance with the instructions set out in the Account Holder Letter.

Copies of the explanatory statement together with the Schemes required to be provided pursuant to section 671 of the Companies Ordinance and in accordance with the practice administered in the BVI are available from the Scheme Website at www.bondcom.com/winswayscheme.

Hard copies of the explanatory statement together with the Schemes and the solicitation packet (which contains copies of the voting and proxy forms) can be obtained free of charge by any person entitled to attend the Scheme Meeting, during usual business hours on any day (other than Saturdays, Sundays or statutory holidays) prior to the day appointed for the Scheme Meeting, from Stephenson Harwood, 18th Floor, United Centre, 95 Queensway, Admiralty, Hong Kong and Walkers at 171 Main Street, PO Box 92, Road Town, Tortola, VG1110, British Virgin Islands upon reasonable prior notice given to those firms.

By the Orders, the Courts have appointed Cao Xinyi or, failing her, a suitable alternative nominated by the Company, to act as chairperson of the Scheme Meeting and has directed the chairperson to report the result of the Scheme Meeting to the Courts.

The Schemes will be subject to the subsequent approval of the Courts and to the fulfilment or waiver (as applicable) of the conditions of the Schemes as set out in the Explanatory Statement.

The petition seeking sanction of the BVI Scheme from the Commercial Division of the Eastern Caribbean Supreme Court shall be heard at [●] (BVI time) on Wednesday 11 May 2016. The petition seeking sanction of the Hong Kong Scheme from the High Court of the Hong Kong Special Administrative Region shall be heard at 10.00 a.m. (Hong Kong time) on Tuesday 17 May 2016. All Scheme Creditors are entitled to attend the sanction hearing in BVI and Hong Kong in person or through counsel to support or oppose the sanctioning of either scheme.

Dated: [●] 2016

HCMP 453 / 2016

IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE
MISCELLANEOUS PROCEEDINGS NO. 453 OF 2016

———————————

IN THE MATTER OF Sections 670(1), 671 of the
Companies Ordinance, Chapter 622 of the Laws of
Hong Kong

and

IN THE MATTER of Winsway Enterprises Holdings
Limited

———————————————————————

**O R D E R**

———————————————————————

Dated this 21st day of March 2016
Filed this  22nd day of March 2016

**Stephenson Harwood**
Solicitors for the Applicant
18th Floor, United Centre
95 Queensway
Hong Kong
Tel  : 2868-0789
Fax : 2868-1504
Ref  : EF/JXS/08-53-05096/2593965.6

**<u>EXHIBIT B</u>**

(Proposed Order)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 15 |
| WINSWAY ENTERPRISES HOLDINGS LIMITED, *f/k/a* WINSWAY COKING COAL HOLDINGS LIMITED, a company incorporated with limited liability under the laws of the British Virgin Islands, | Case No. 16-_____ (      ) |
| Debtor in a Foreign Proceeding. | |

---

**ORDER GRANTING VERIFIED PETITION FOR RECOGNITION OF FOREIGN
NONMAIN PROCEEDING SUPPLEMENTING THE VOLUNTARY
PETITION [ECF NO. 1] AND MOTION FOR RELATED RELIEF**

Upon consideration of the Verified Petition for Recognition of Foreign Nonmain

Proceeding Supplementing the Voluntary Petition [ECF No. 1] and Motion for Related Relief,

dated April 6, 2016 [ECF No. 4] (together with the Voluntary Petition [ECF No. 1], the

"**Petition**") and the Supporting Declarations of Cao Xinyi and Jamie John Stranger (together

with the Petition, the "**Chapter 15 Pleadings**"), filed on April 6, 2016 by or on behalf of the

Petitioner, Cao Xinyi, in her capacity as the duly-appointed foreign representative of Winsway

Enterprises Holdings Limited, formerly known as Winsway Coking Coal Holdings Limited

("**Winsway**" or the "**Debtor**"), a company incorporated with limited liability under the laws of

the British Virgin Islands and registered as a non-Hong Kong company in Hong Kong under Part

XI of the then Companies Ordinance, the debtor in a scheme of arrangement pursuant to sections

673 and 674 of the Companies Ordinance (Cap 622) of Hong Kong (the "**Hong Kong**

**Proceeding**") concerning Winsway currently pending before the High Court of the Hong Kong

Special Administrative Region (the "**Hong Kong Court**"); and the Court having considered and

reviewed the Chapter 15 Pleadings, and other filings referred to herein, and having held a

hearing to consider the relief requested in the Petition on April __, 2016 (the "**Hearing**"); and it appearing that timely notice of the filing of the Chapter 15 Pleadings and the Hearing has been (a) given to the (i) Debtor, (ii) the United States Trustee for Region 2, (iii) counsel to the *Ad Hoc* Committee (as hereinafter defined), (iv) Deutsche Bank Trust Company Americas, in its capacity as indenture trustee, and (v) Bondholder Communications Group LLC, as the Information Agent for distribution to the Scheme Creditors; (b) electronically transmitted to any holder of the Notes that provided an email address to the Information Agent; (c) posted on (i) the website maintained by the Information Agent for information pertaining to the Scheme and (ii) and the Debtor's website; (d) published through the announcement systems of the Depository Trust Company; and, (e) published in the National Edition of the WALL STREET JOURNAL; and it appearing that no other or further notice need be provided; and, upon all of the proceedings had before the Court, after due deliberation sufficient cause appearing therefor, it is hereby,

FOUND AND DETERMINED AS FOLLOWS[1]:

1.     This case was properly commenced pursuant to sections 1504 and 1515 of the United States Bankruptcy Code, 11 U.S.C. § § 101 *et seq.* (the "**Bankruptcy Code**").

2.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1334 and 157 and the Amended Standing Order of Reference, dated January 31, 2012, (No. M-431, 12-Misc-00032, S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).

3.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

---

[1]     Any capitalized terms that are not specifically defined in this Order have the meanings ascribed to such terms in the Explanatory Statement In Relation To Inter-Conditional Schemes of Arrangement Between Winsway and the Scheme Creditors ("**Explanatory Statement**"), a copy of which is annexed as Exhibit B to the Declaration of Cao Xinyi Pursuant to 28 U.S.C. § 1746 [ECF No. 5].

4.      Venue of this case is proper in the Southern District of New York pursuant to 28 U.S.C. § 1410.

5.      The Hong Kong Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

6.      The Hong Kong Proceeding is pending in the Hong Kong Special Administrative Region of the People's Republic of China, in which the Debtor has an "establishment" within the meaning of section 1502(2) of the Bankruptcy Code.

7.      The Hong Kong Proceeding is a "foreign nonmain proceeding" within the meaning of sections 1502(5) and 1517(b)(2) of the Bankruptcy Code and is entitled to recognition as a foreign nonmain proceeding in respect of the Debtor.

8.      The Petitioner, Cao Xinyi, has been appointed to act as the "foreign representative" with respect to the Hong Kong Proceeding within the meaning of section 101(24) of the Bankruptcy Code.

9.      The Petition meets all of the requirements set forth in section 1515 of the Bankruptcy Code.

10.     Appropriate notice of the filing of, and the Hearing on, the Petition was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

11.     The Hong Kong Proceeding is entitled to recognition by the Court pursuant to section 1517(a) of the Bankruptcy Code.

12.     The Debtor and the Petitioner are entitled to relief under section 1521 of the Bankruptcy Code necessary to effectuate the purpose of chapter 15 of the Bankruptcy Code and protect the assets of the Debtor and the interests of its creditors.

- 3 -

13.    The relief granted hereby is necessary and appropriate, in the interests of the public and of international comity, not inconsistent with the public policy of the United States, warranted pursuant to sections 105(a), 1507(a), 1509(b)(2)-(3), 1515, 1517, 1521(a) and 1525(a) of the Bankruptcy Code, and will not cause hardship to creditors of the Debtor or other parties in interest that is not outweighed by the benefits of granting that relief.

14.    The relief granted hereby is necessary to effectuate the purposes and objectives of chapter 15 of the Bankruptcy Code and to protect the Debtor and the interests of its creditors and other parties in interest.

15.    Absent the relief granted hereby, the Debtor may be subject to the prosecution of judicial, quasi-judicial, arbitration, administrative or regulatory actions or proceedings in connection with the claims against the Debtor or its property, thereby interfering with and causing harm to, the Debtor, its creditors, and other parties in interest in the Hong Kong Proceeding and, as a result, the Debtor, its creditors and such other parties in interest would suffer irreparable injury for which there is no adequate remedy at law.

For all of the foregoing reasons, and for the reasons stated by the Court on the record of the Hearing, and after due deliberation and sufficient cause appearing therefor, it is now

ORDERED, ADJUDGED AND DECREED that:

1.    The Petition is granted and any objections thereto are overruled with prejudice;

2.    The Hong Kong Proceeding is granted recognition as a foreign nonmain proceeding (as defined in section 1502(5) of the Bankruptcy Code) and the Petitioner is granted all of the relief afforded to such proceedings pursuant to sections 1517(a) and (b)(2) of the Bankruptcy Code;

3.      The Petitioner is recognized as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Hong Kong Proceeding;

4.      The Petitioner is hereby entrusted with the administration of any and all of the Debtor's assets within the territorial jurisdiction of the United States;

5.      As of the Scheme Effective Date (as defined in the Explanatory Statement) with respect to the Debtor's scheme of arrangement ("**Scheme**"), the Scheme and the sanction order entered by the Hong Kong Court (the "**Sanction Order**") are recognized, granted comity, and entitled to full force and effect against all entities (as that term is defined in section 101(15) of the Bankruptcy Code) in accordance with their terms, and such terms shall be binding and fully enforceable on all creditors whether or not they actually agreed to be bound by the Scheme or participated in the Hong Kong Proceeding;

6.      As of the Final Distribution Date (as defined in the Explanatory Statement) upon completion of all of the steps set out in Clause 11.3.1 of the Scheme (and provided that the step set out in Clause 11.2.3 of the Scheme has been completed), the Restructuring Documents numbered 2 to 8 inclusive in Schedule 1 to the Scheme (collectively, the "**Restructuring Documents**") and the releases contained in sections 28.1 and 28.2 of the Scheme are recognized, granted comity, and entitled to full force and effect against all entities (as that term is defined in section 101(15) of the Bankruptcy Code) in accordance with their terms, and such terms shall be binding and fully enforceable on all creditors whether or not they actually agreed to be bound by the Scheme or the Restructuring Documents or participated in the Hong Kong Proceeding;

7.      As of the Initial Distribution Date (as defined in the Explanatory Statement) upon completion of all of the steps set out in Clause 11.2.1 of the Scheme (and provided that the step set out in Clause 11.2.3 of the Scheme has been completed), the partial release of the Scheme

- 5 -

Claims of each Initial Scheme Creditor (as defined in the Explanatory Statement) by an amount

equal to the value of the Scheme Consideration (as defined in the Explanatory Statement)

received by that Scheme Creditor on the Initial Distribution Date and as of the Final Distribution

Date (each as defined in the Explanatory Statement) upon completion of all of the steps set out in

Clause 11.3.1 of the Scheme (and provided that the step set out in Clause 11.2.3 of the Scheme

has been completed), the release in full of all of the remaining Scheme Claims of the

Participating Scheme Creditors (as defined in the Explanatory Statement) and all of the Scheme

Claims of the Non-Participating Scheme Creditors (as defined in the Explanatory Statement) are,

in each case, hereby given full force and effect within the territorial jurisdiction of the United

States in accordance with their terms and to the maximum extent enforceable under Hong Kong

law;

8.      As of the Restructuring Effective Date (as defined in the Explanatory Statement),

all Scheme Creditors are permanently enjoined from:

(a)      commencing or continuing in any manner, any Prohibited Proceeding (as defined

in the Explanatory Statement) in respect of, arising from or relating to the Notes

(as defined in the Explanatory Statement) and/or any Liability (as defined in the

Explanatory Statement) arising directly or indirectly pursuant to, under or in

connection with any Note Documents (as defined in the Explanatory Statement)

provided, however, that such injunction applies only to the extent that

commencing or continuing such action is inconsistent with the Scheme, the

Sanction Order and/or Hong Kong law; or

(b)      commencing any suit, action or proceeding in the territorial jurisdiction of the

United States to settle any dispute which arises out of any provision of the

Scheme and/or relating to the Scheme;

9.      No action taken by the Petitioner in preparing, filing, serving, implementing or otherwise acting in furtherance of the Scheme, this Order, the chapter 15 case, or any further order for additional relief in this chapter 15 case, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Petitioner as foreign representative, including without limitation, pursuant to section 1510 of the Bankruptcy Code;

10.     This Court retains jurisdiction with respect to the enforcement, amendment, or modification of this Order, any request for additional relief and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of the Court; and,

11.     This Order shall be effective and enforceable immediately upon entry and constitutes a final order within the meaning of 28 U.S.C. § 158(a).

Dated:  May __, 2016
        New York, New York                    _____
                                              United States Bankruptcy Judge