REED SMITH LLP
  Michael J. Venditto
  Sarah K. Kam
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

*Attorneys for Cao Xinyi, as Petitioner and
Foreign Representative*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| WINSWAY ENTERPRISES HOLDINGS LIMITED, *f/k/a* WINSWAY COKING COAL HOLDINGS LIMITED, a company incorporated with limited liability under the laws of the British Virgin Islands, | Case No. 16-_____ ( ) |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF CAO XINYI
PURSUANT TO 28 U.S.C. § 1746**

I, Cao Xinyi, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I have been appointed as the Foreign Representative of Winsway Enterprises Holdings Limited, *f/k/a* Winsway Coking Coal Holdings Limited ("Winsway" or the "Debtor"), the Debtor in this case.

2. I submit this declaration (the "Declaration") in support of the Verified Petition for Recognition of Foreign Nonmain Proceeding and Motion for Related Relief dated April 6, 2016 (together with the Form of Voluntary Petition filed contemporaneously therewith, the

"Petition"),[1] which seeks entry of an order granting recognition to a proceeding pursuant to sections 673 and 674 of the Companies Ordinance (Cap 622) of Hong Kong (the "Hong Kong Proceeding") currently pending before the High Court of the Hong Kong Special Administrative Region (the "Hong Kong Court").

3. In the Petition, Winsway has requested that this Court enter an order (i) recognizing the Hong Kong Proceeding as a foreign nonmain proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and (ii) granting further permanent relief pursuant to sections 105(a), 1507(a), 1509(b)(2)-(3), 1521(a) and 1525(a) of the Bankruptcy Code, all in support of the financial restructuring of Winsway under Hong Kong law (the "Restructuring") through a scheme of arrangement (the "Scheme"), if such Scheme is duly approved by a requisite majority of affected creditors and sanctioned by the Hong Kong Court, all in accordance with applicable Hong Kong law.

4. I am Winsway's chief executive officer, an executive director and the company secretary. Through these roles, I am fully aware of, and closely involved in, all of the financial affairs and overall restructuring both of Winsway and its affiliates. I submit this Declaration on the basis of documentation in my possession or supplied to me and on facts and matters that are known to me or of which I have been informed by others. Where I have been informed by others, the information is true to the best of my knowledge and belief.

5. On February 25, 2016, I was duly appointed foreign representative pursuant to a resolution (the "Resolution of Appointment") of the board of directors of the Debtor (attached hereto as Exhibit A). I am specifically authorized to act in that capacity in respect of the Hong

---

[1] Except as otherwise indicated, capitalized terms used herein carry the meanings ascribed to them in the Petition.

Kong Proceeding in restructuring-related proceedings concerning the Debtor in the United States, including in this chapter 15 case, and regarding the relief requested in the Petition.

A. **The Debtor and its Corporate Group Structure**

6. Winsway was incorporated in the British Virgin Islands ("BVI") on September 17, 2007 as a limited liability company pursuant to the BVI Companies Act. At the time its name was Winsway Coking Coal Holdings Limited; it changed its name to Winsway Enterprises Holdings Limited on June 25, 2014. Notwithstanding that Winsway is incorporated in BVI, it does not conduct any business in BVI.

7. On September 6, 2010, Winsway was registered as a non-Hong Kong company by the Hong Kong Registrar of Companies. Since October 11, 2010, Winsway has been listed on the Hong Kong Stock Exchange with stock code 1733.

8. Winsway is an investment holding company and its subsidiaries include companies incorporated in the BVI, Hong Kong, Singapore, Australia and the People's Republic of China ("PRC") (collectively, the "Group"). Winsway is the ultimate parent of the Group. An organizational chart depicting the companies comprising the Group is attached as Appendix 6 to the Explanatory Statement which is attached hereto as Exhibit B.

B. **The Business of the Debtor and the Group**

9. The principal activities of the Group are the processing and trading of coking coal and other products and providing logistics services.

10. Winsway maintains a number of logistics parks and coal processing plants strategically located at the three major China-Mongolia border crossings and also maintains facilities at the Bayuquan and Longkou ports which allow it to process seaborne coal and service customers in Northeast China and the Shandong province.

C.  **Summary of Significant Indebtedness**

*The Notes*

11.  In 2011, Winsway issued $500,000,000 in U.S. dollar denominated notes. These 8.5 % senior notes due in 2016 (the "Notes") were issued by Winsway pursuant to a New York law-governed indenture dated April 8, 2011 (as amended, the "Indenture"), appointing Deutsche Bank Trust Company Americas ("Deutsche Bank") as the indenture trustee, collateral agent and principal paying and transfer agent.[2] Deutsche Bank is located in New York and maintains its corporate office within the Southern District of New York.[3]

12.  Winsway's obligations under the Notes are guaranteed by its subsidiaries (collectively, the "Subsidiary Guarantors") and secured by, *inter alia*, pledges of the shares of each of the Subsidiary Guarantors. This collateral is held by Deutsche Bank in its capacity as the collateral agent.

13.  The current outstanding principal indebtedness under the Notes is approximately US$309,310,000 (in addition to approximately US $40,000,000 million of accrued but unpaid interest). The Notes will mature on April 8, 2016.

*Chinese loan facilities*

14.  The Group's operations are also funded by a variety of financiers based in the PRC including, but not limited to, Industrial and Commerce Bank of China, Industrial Bank of China, CITIC Bank, Shanghai Pudong Development Bank, Jilin Bank, China Merchants Bank, Agriculture Bank of China, the Bank of Communications and China Everbright Bank.

---

[2] The Indenture was amended by the Supplemental Indenture dated 24 April 2012 and the Second Supplemental Indenture dated 11 October 2013.
[3] Section 4.02 of the Indenture requires Winsway to maintain an office or agency in the Borough of Manhattan, the City of New York, where, *inter alia*, the Notes may be presented for payment or surrendered for registration of transfer or exchange. Winsway has designated the office of the principal paying and transfer agent, Deutsche Bank, located at 60 Wall Street, New York, New York 10005, for these purposes.

15. As at November 30, 2015, the aggregate amount of this PRC debt was approximately HK$1,205 million (*i.e.*, approximately US$ 155.4 million using an exchange rate of 7.75 HK$ to 1 US$), comprising secured debt of approximately HK$358 million (*i.e.*, approximately US$ 46.2 million, using an exchange rate of 7.75 HK$ to 1 US$) and unsecured debt of approximately HK$847 million (*i.e.*, approximately US$ 109.2 million, using an exchange rate of 7.75 HK$ to 1 US$).

16. This PRC debt will not be subject to, or affected by, the Scheme.

*Intercompany debt*

17. The Group has substantial intercompany receivable and payable balances owing between different entities within the Group.

18. The intercompany balances, which relate to operational or financing activities and have accumulated over a number of years, can be broadly categorized into the following types of transactions: (a) trading balances; and (b) intra-Group financing; and (c) prepayments, mainly relating to the pre-purchase of coal.

19. Again, these intercompany balances will not be subject to, nor affected by, the Scheme.

D. **Background to the Restructuring**

*Financial condition and mitigating actions taken*

20. Against the backdrop of the softening Chinese macro economy and real estate market, the coal industry in China has been facing increasing challenges. Global commodity prices have decreased significantly over the past few years. In particular, the prices for Mongolian and seaborne coal in China dropped 54.68% and 57.47%, respectively, from 2011 through the first half of 2015.

21. Winsway's finances and liquidity have been impacted by these depressed prices, as well as oversupply and declining demand in the PRC coal market. Amid this challenging environment, Winsway has been streamlining its operations to lower its costs in the logistics and mining sectors while strictly controlling the cash flow within the Group. In particular, Winsway has reduced its inventory of coal (and its volume of procurement of Mongolian coal, specifically) to strengthen cash flow. Despite these efforts, Winsway has lost meaningful availability under its banking facilities. This has adversely impacted its high-volume seaborne coal business, which is heavily dependent on these credit facilities.

22. In the first half of 2015, Winsway generated revenue of approximately HK$3,396 million (*i.e.*, approximately US$ 438.2 million using an exchange rate of 7.75 HK$ to 1 US$). Losses from continuing operations were approximately HK$1,581 million (*i.e.*, approximately US$ 204 million using an exchange rate of 7.75 HK$ to 1 US$), compared to losses of HK$421 million (*i.e.*, approximately US$ 54.3 million using an exchange rate of 7.75 HK$ to 1 US$) from continuing operations in the first half of 2014. The increase in losses was explained by an impairment provision made to non-current assets of the Company in an amount of HK$1,215 million (*i.e.*, approximately US$ 156.7 million using an exchange rate of 7.75 HK$ to 1 US$).

23. In response to the prevailing market conditions and the unsustainability of the existing business model in such conditions, Winsway intends to reposition itself by shifting its business from a trading model toward an integrated e-commerce supply chain service provider that can provide small and medium-sized end-customers as well as banks with services in relation to, among others, trading and matching services, logistics and distribution, collateral management and financing. However, its ability to implement this strategy is heavily dependent

on the successful completion of the Restructuring (without which Winsway will be unable to raise the new financing necessary to fund it).

*Appointment of advisers and formation of Ad Hoc Committee*

24.     In its annual results announcement for the year ended December 31, 2014, published on March 26, 2015, Winsway announced that it was considering a restructuring of the Notes with cash, equity or other consideration offered at a discount to the principal amount which would be conditioned on the completion of a new capital raising.

25.     For these purposes, and to review its potential options (including both as to process and sources of financing), Winsway appointed UBS and AlixPartners to act as its financial advisers, and Stephenson Harwood, Reed Smith LLP, and Walkers to act as its legal advisers and to review its potential options. Winsway also engaged Bondholder Communications Group ("Bondcom") to identify significant holders of the Notes with a view to initiating discussions about the options for restructuring the Notes. This was followed by the publication of the announcement by Winsway in early April 2015 in which it called for the holders of the Notes to form a group for the purposes of facilitating such discussions. Around the same time, an *ad hoc* group of holders of the Notes (the "*Ad Hoc* Committee") was formed, which engaged Houlihan Lokey as its financial advisers and Akin Gump Strauss Hauer & Feld as its legal advisers (together, the "*Ad Hoc* Committee Advisers").

26.     Winsway did not make the scheduled interest payment on the Notes in the amount of US$13,150,000 which was due on April 8, 2015. As a result, an event of default occurred under the Indenture and is continuing.[4]

---

[4]     Winsway subsequently failed to make another interest payment (in an equal amount) that came due on October 8, 2015.

7

27. Under the terms of the Indenture, when an event of default occurs and is continuing, the indenture trustee may, and upon the request of holders of 25% in principal amount of the outstanding Notes shall: (a) declare the unpaid principal (and premium, if any) and accrued interest to be immediately due and payable; and (b) instruct the collateral agent to foreclose on the collateral.

28. On May 8, 2015, Winsway entered into a standstill agreement with the Subsidiary Guarantors and the Noteholders comprising the *Ad Hoc* Committee, pursuant to which they agreed, among other things, to withhold from commencing enforcement action under the Indenture (the "Standstill"). This Standstill was extended on a rolling basis until November 27, 2015. To date, the indenture trustee has neither accelerated the Notes nor instructed the collateral agent to foreclose on the Collateral.

29. On or around May 15, 2015, the *Ad Hoc* Committee Advisers convened a conference call to inform other holders of the Notes of the formation of the *Ad Hoc* Committee and their intention to engage in discussions with Winsway and its advisers.

*Exploration of options and agreement on terms of the Restructuring*

30. Both before and during the Standstill period, Winsway engaged in discussions with various potential investors with a view to raising capital to fund a restructuring of the Notes. In this regard, Winsway and its advisers engaged in negotiations with a number of commercial entities (at least nine) over an extended period of some 10 to 12 months. Two of those parties undertook commercial and/or legal due diligence in respect of the transaction. In one instance, a term sheet was heavily negotiated between the prospective investor and Winsway, along with the *Ad Hoc* Committee. However, Winsway never obtained a commitment to provide the necessary funding.

31. In addition to identifying and negotiating with the above commercial parties, the Company also identified and approached approximately 8 private equity firms, special situation funds and distressed debt funds as well as approximately 6 local Hong Kong investors. However, in each case, no interest was identified.

32. In parallel with discussions with third party investors, Winsway and its advisers engaged in discussions with the company's existing controlling shareholder, Mr. Wang Xingchun, with respect to the possibility of further investment through an underwritten rights issue. The viability of any such transaction depended on reaching an agreement with the *Ad Hoc* Committee on the terms on which the Notes might be restructured.

33. This process culminated in the terms of the Restructuring being agreed between the parties in November 2015. On November 25, 2015, Winsway, the Subsidiary Guarantors and the Noteholders comprising the *Ad Hoc* Committee entered into a restructuring support agreement (the "Restructuring Support Agreement"), to which a term sheet reflecting the agreed terms of the Restructuring was attached.

34. On the same date, and as a condition to the Restructuring Support Agreement becoming effective, Mr. Wang entered into an irrevocable undertaking to underwrite a rights issue that would fund the cash consideration payable under the Scheme (and certain related costs). It was subsequently agreed that the underwriting structure would be revised such that Famous Speech Limited, a company controlled by Mr. Wang's daughter, would act as underwriter. Supplemental undertakings were entered into to document this.

*Terms of the Restructuring Support Agreement*[5]

35.  In the Restructuring Support Agreement, each of the subscribing Noteholders agreed that they would (or would procure that a duly authorized representative, proxy or nominee would) take all reasonable actions which they are reasonably requested by Winsway to take in order to support, facilitate, implement or otherwise give effect to the Restructuring (provided that such action is consistent in all material respects with the Term Sheet). These actions include, *inter alia*: (i) supporting the Schemes prior and subject to the sanction of the BVI Court and the Hong Kong Court, as applicable[6]; (ii) attending the Scheme Meetings, either by proxy or in person, and voting in favour of the Schemes; (iii) supporting any filings and petitions by Winsway or any Subsidiary Guarantor in such other jurisdictions as may reasonably required to implement the Restructuring; and (iv) supporting the Petition seeking recognition of the Hong Kong Proceedings.

36.  The Consenting Noteholders also agreed that, prior to any termination of the Restructuring Support Agreement, they would not, *inter alia*: (i) intentionally take, encourage, assist or support any action which would, or would reasonably be expected to, frustrate, delay, impede or prevent the Schemes or the Restructuring; or (ii) commence, take, support or actively assist any proceedings against Winsway and/or any Group Company or any action in connection with any Default or Event of Default (as such terms are defined in the Indenture).

37.  The Restructuring Support Agreement provides that Winsway and the Subsidiary Guarantors will (among other things) take all such actions which, in the reasonable opinion of

---

[5] The terms used in this section shall, unless otherwise defined, have the meaning given to them in the Explanatory Statement, a copy of which is attached here as Exhibit B.

[6] As Winsway is incorporated in the BVI, a parallel scheme of arrangement process is also going to be undertaken in that jurisdiction. My understanding is that the Hong Kong Court may not recognise a scheme sanctioned in another jurisdiction (*i.e.*, BVI) as a defence to any adverse creditor action. Therefore, to provide certainty with respect to the Restructuring, it is to be implemented through the Scheme in Hong Kong, supported by the parallel scheme of arrangement process in BVI and recognition and additional relief in the United States under Chapter 15.

the majority of the *Ad Hoc* Committee, are reasonably necessary to take in order to support, facilitate, implement or otherwise effect the Restructuring

38. The Restructuring Support Agreement also imposes certain restrictions on the actions of Winsway and the Subsidiary Guarantors. These include certain financial and operational covenants as well as a prohibition on taking any action which would, or would reasonably be expected to, frustrate, delay, impede or prevent the Schemes or the Restructuring or which is inconsistent with the Restructuring Support Agreement or the Term Sheet.

39. The Restructuring Support Agreement will terminate immediately upon the occurrence of certain specified events including (among others) the effectiveness of the Restructuring, the entry of a final non-appealable order by any court of competent jurisdiction preventing, prohibiting or materially restricting the consummation of the Restructuring; the Schemes not being approved by a majority in number representing at least 75% in value of the Scheme Creditors present and voting (either in person or by proxy) at the Scheme Meetings; or either the Hong Kong Court or the BVI Court granting a final, non-appealable order declining to sanction the relevant Scheme. A majority of the *Ad Hoc* Committee is also entitled to terminate the Restructuring Support Agreement under certain circumstances, including a breach of any provision of the Restructuring Support Agreement by Winsway or any Subsidiary Guarantor, unless the breach is capable of remedy and is remedied within five (5) business days.

40. Under the terms of the Restructuring Support Agreement, Winsway has undertaken to pay on or around the Restructuring Effective Date the Consent Fee to the Noteholders who acceded to the Restructuring Support Agreement ("Consenting Scheme Creditors") on or before 5.00 pm (Hong Kong time) on December 23, 2015 (or such later date as might be agreed between Winsway and the *Ad Hoc* Committee) (the "Consent Fee Deadline").

11

41. The Consent Fee is an amount of US$6,796,666, being equal to 2% of the outstanding principal and accrued but unpaid interest on the Notes as of November 25, 2015. Each Consenting Scheme Creditor is entitled to a *pro rata* share of the Consent Fee, calculated by reference to the proportion that its Notes bears to the aggregate Notes held by all Consenting Scheme Creditors as at the Consent Fee Deadline.

42. Winsway has received accession letters from Scheme Creditors holding Notes in an aggregate principal amount of approximately US$257,281,000, representing approximately 83% by value of the outstanding principal amount of the Notes and it is anticipated that all such persons will be eligible to receive their share of the Consent Fee.

E. **Implementation of the Scheme and the Restructuring**

43. The terms of the restructuring are set out in the Scheme and explained in full in the Explanatory Statement (see Exhibit B, annexed). In summary, the proposed restructuring will consist of the redemption of the outstanding Notes and all accrued but unpaid interest amounts up to the date of the settlement at a discount, with Noteholders accepting a combination of cash consideration, scheme shares and contingent value rights ("CVR"s) in full settlement. As part of the restructuring the Subsidiary Guarantors will be released from their guarantees in respect of the Notes and the charges over their shares will be released. The release of these guarantees is considered to be necessary for the Scheme to operate because without the release of the Subsidiary Guarantees, if the guarantees were called upon by the creditors, the Subsidiary Guarantors would have a right of contribution against Winsway, thus defeating the object of the Scheme.

44. As is explained in more detail in section 9 of the Explanatory Statement, in consideration for the release in full of all claims of the Noteholders in respect of any liability of Winsway or any Subsidiary Guarantor arising directly or indirectly pursuant to, under or in

connection with the Indenture and the Notes (and the related security), the following consideration will be available, in aggregate, to the Noteholders that submit the required documentation in respect of their holdings before the Bar Date (as defined in the Scheme):

- cash consideration in the aggregate total of USD41,703,334 ("Cash Consideration");

- shares representing, in aggregate number, 18.75% of the total issued shares in Winsway on a fully diluted basis on the Final Distribution Date (as defined in the Scheme) ("Scheme Shares"); and

- CVRs with an aggregate face value of USD10 million.

45. Each Noteholder submitting the relevant documentation evidencing its claim by the Initial Scheme Consideration Deadline (as defined in the Scheme) will have the right to elect the type of elective consideration it wishes to receive (either Cash Consideration or Scheme Shares, or a combination of the two) and will be entitled to receive an initial distribution on the Initial Distribution Date (as defined in the Scheme). Noteholders who do not make an election by the Initial Scheme Consideration Deadline will be deemed to have elected to receive their entitlement to the elective consideration in the form of Scheme Shares only. Noteholders who submit the relevant documentation evidencing their claims after the Initial Scheme Consideration Deadline (as defined in the Scheme) but before the Bar Date (as defined in the Scheme) will be entitled to receive a distribution on the Final Distribution Date (as defined in the Scheme).

46. The Cash Consideration is to be funded by the proceeds of a rights issue pursuant to which Winsway will issue new shares (to be listed on the HKEX). The rights issue and the Scheme will be inter-conditional.

47. On the Final Distribution Date (as defined in the Scheme), the aggregate amount of the Cash Consideration and the aggregate number of Scheme Shares and CVRs will be completely allocated *pro rata* among the participating Noteholders (*i.e.*, all Noteholders who have submitted the relevant documentation evidencing their claims before the Bar Date (as defined in the Scheme)) in consideration of the claims of all Noteholders under and in connection with the Notes being extinguished.

48. If any Noteholder does not submit the required documentation by the Bar Date, it will not receive any consideration under the Scheme but its claims pursuant to, under or in connection with the Indenture and the Notes (and the related security) will be released.

49. Implementing the proposed restructuring consensually (*i.e.*, in the absence of a scheme of arrangement) would require the unanimous consent of all Noteholders. Given the disparate Noteholder base it would be impossible as a practical matter to obtain the consent of every Noteholder. For this reason, I consider that using the scheme of arrangement procedures in Hong Kong and BVI, coupled with recognition and additional relief in the United States through a case under Chapter 15 of the United States Bankruptcy Code (Chapter 15), is the only viable method to implement the Restructuring.

F. **The Debtor's Establishment in Hong Kong**

50. Winsway is organized under BVI law but its center of main interests is likely to be in the PRC (given that the Group's primary operating facilities are located in that country and its management is based in Beijing). However, Winsway also clearly has an establishment in Hong Kong.

51. Winsway is registered in Hong Kong as a non-Hong Kong company. Under Hong Kong law, registration is mandatory for any non-Hong Kong corporation that has

established a place of business in Hong Kong. In addition, six of Winsway's wholly owned subsidiaries are incorporated in Hong Kong.

52. Winsway's stock is listed on the Stock Exchange of Hong Kong and, as at July 2015, over 50% of the shareholders were located in Hong Kong. Winsway convenes its annual general meetings and extraordinary general meetings in Hong Kong.

53. Winsway's principal registered office is located in Hutchinson House, 10 Harcourt Road, Hong Kong. Four Winsway employees work at this office on a full-time basis. The accounting books and records, along with all statutory records, are also maintained at this office. Winsway files income tax returns on an annual basis with the Hong Kong Inland Revenue Department.

54. Winsway has 20 open bank accounts held at the Hong Kong branches of 6 different banks.

55. A number of the meetings of Winsway's directors are held in Hong Kong. Over recent years there have been approximately two board meetings in Hong Kong each year. Two of the current directors, Chuan Lu and Yuk Keung Ng, reside in Hong Kong and are Hong Kong ID holders.

56. Based on the population of Noteholders identified by Bondcom to date, it is thought that approximately 50% by value of the Notes are held by Noteholders in Hong Kong.

57. As at February 25, 2016, Winsway had two intra-Group creditors based in Hong Kong; it owed Winsway Coking Coal Logistics Co. Limited HK$326,869.34 and Winsway Resources (HK) Holdings Ltd approximately HK$316,330,668.92.

G.    **Activity to Date in the Hong Kong Proceeding**

58. On February 26, 2016, the Debtor filed an *ex parte* originating summons at the Hong Kong Court, pursuant to which it sought an order (the "Convening Order") directing it to,

*inter alia*, convene a meeting of the Scheme Creditors, as a single class of creditors, for the purpose of considering and, if thought fit, approving the Scheme (the "Scheme Meeting").

59.    On March 21, 2016, the Hong Kong Court heard the Debtor's application and issued the Convening Order in the terms sought by the Debtor.  Amongst other things, the Convening Order directed that:

   a. the Scheme Meeting be held at the offices of Stephenson Harwood, 18th Floor, United Centre, 95 Queensway, Hong Kong, at 10.00am (Hong Kong time) on 3 May 2016;

   b. the Debtor give the Scheme Creditors not less than 21 clear days' notice of the Scheme Meeting;

   c. notice of the Scheme Meeting be circulated to Scheme Creditors in the following ways:

      i. by notice on the Scheme website (www.bondcom.com/winswayscheme)

      ii. by publishing information through the announcement systems of the depository;

      iii. by notice via electronic mail from Bondcom, the Information Agent for the Scheme, to each Scheme Creditor who has notified or notifies the Information Agent of its valid email address; and

      iv. by notice published on the HKEX Announcements page for Winsway;

      v. by notice published on the SGX Announcements page for Winsway; and

      vi. by advertisement in the BVI Official Gazette, BVI Beacon, South China Morning Post, the Hong Kong Economic Times (translated into traditional Chinese), the China Business News (第一财经日报) (translated into

      simplified Chinese), the Wall Street Journal and the international editions of the Wall Street Journal and the Financial Times;

d. the notice of the Scheme Meeting contain a link to enable Scheme Creditors to access electronic copies of the key documents relating to the Scheme, comprising the Scheme documents, Explanatory Statement (a document broadly equivalent to a disclosure statement under section 1125 of the Bankruptcy Code) and the "solicitation packet" (comprising the forms that the Scheme Creditors and their intermediaries must complete to participate in the Scheme, together with instructions in relation thereto);

e. I (or, failing me, a suitable alternative nominated by Winsway) act as chairperson at the Scheme Meeting; and

f. the substantive hearing at which the Hong Kong Court will determine whether or not to sanction the Scheme (the "Sanction Hearing") shall be heard at 10:00am (Hong Kong time) on May 17, 2016.

60. On March 24, 2016, electronic copies of all of the key documents relating to the Scheme, including notice of the Scheme Meeting, were uploaded to the Scheme website and the Company's own website (http://www.winsway.com/html/ir_bond.php).

61. On March 24, 2016, electronic copies of all of the key documents relating to the Scheme, including notice of the Scheme Meeting, were sent by Bondcom (on behalf of the Debtor) to the depositary. On March 30, 2016, electronic copies of the announcement and a link to the Scheme website were provided to Account Holders previously identified as holding these notes and to Euroclear and Clearstream. On April 1, 2016 the documents were posted to the

17

depositary's legal notices system and the event had been set up to record Noteholders' elections with respect to their Notes.

62. Between March 24, 2016 and April 1, 2016, Bondcom also sent an electronic mail to each Scheme Creditor that had identified itself (and provided contact details) to Bondcom, attaching notice of the Scheme Meeting and directing the Scheme Creditor to the Scheme website.

63. On March 24, 2016, notice of the Scheme Meeting was published on HKEX Announcements and SGX Announcements pages for Winsway.

64. Between March 23, 2016 and March 31, 2016, Stephenson Harwood, Walkers LLP and Reed Smith LLP sent out the notice of the Scheme Meeting for advertisement in the next editions of the various publications identified above.

H.  **The Debtor's Connections to the United States and the Need for Chapter 15 Relief**

65. On February 4, 2016 Winsway deposited US$49,978.00 into the client account of Reed Smith LLP. These funds continue to be held for Winsway's benefit by Reed Smith LLP in its bank account held with Citibank NA at the East 53rd Street, New York, New York branch.

66. Pursuant to the terms of the Indenture, Deutsche Bank, in its capacities as indenture trustee and collateral agent, is holding the share certificates of each of the Subsidiary Guarantors in New York. The Company therefore has assets in the United States.

67. In addition, the Indenture contains New York choice of law and choice of forum provisions.

68. Under the Indenture, Winsway has appointed an authorized agent for service of process in New York and numerous acts must be performed in New York City.

69.     The entry of an order by this Court granting recognition to the Hong Kong Proceeding is a condition precedent to the occurrence of the Restructuring Effective Date under the Scheme (and, in particular, the compromises therein becoming fully effective).

70.     I understand from Stephenson Harwood that this has been included as a condition precedent because, in considering whether to sanction the Scheme, the Hong Kong Court will need to be reasonably assured that, if approved, it will have a real and substantive effect. In particular, the Hong Kong Court will need to be satisfied that the debt comprised by the Notes will be discharged under the law governing that debt, *i.e.* New York law. This is why, as part of the Requested Relief, Winsway is seeking an order that the Scheme and Restructuring Documents be given full force and effect and that their terms are binding and fully enforceable.

71.     Although entry of a recognition order is not a condition precedent to the Hong Kong Court sanctioning the Scheme (only to the Scheme becoming unconditional and fully operational)[7], Winsway requests that this Court conduct a recognition hearing prior to the date of the Sanction Hearing on May 17, 2016 if possible. This is because the Hong Kong Court will otherwise have to hear, and form a view on, evidence at the Sanction Hearing with respect to the probability of this Court granting recognition to the Hong Kong Proceeding and entering the Requested Relief. It would be preferable for the Hong Kong Court to have certainty with respect to this point and to know that this condition had been satisfied.

72.     In any case, Winsway requests that the recognition order is entered in good time before June 17, 2016, being the longstop date under the Restructuring Support Agreement and the Scheme, *i.e.* the date by which all conditions to the Scheme must have been satisfied, failing which both arrangements will terminate. Unless this date were to be extended with the agreement

---

[7] The Scheme will become effective when the Hong Kong Court enters an order sanctioning the Scheme; however, the key operative terms will not become effective until the Restructuring Effective Date occurs.

of the majority of the *Ad Hoc* Committee, the Restructuring would fail and there would be no fetter on the ability of any Noteholder to take action against the Debtor in respect of the amounts due in respect of the Notes.

### Conclusion

73. The Restructuring of Winsway has been a lengthy but collaborative process. With cooperation and assistance from the *Ad Hoc* Committee and the *Ad Hoc* Committee advisors, Winsway has proposed a Restructuring that has obtained the support of Scheme Creditors holding 83% of the aggregate debt. With such overwhelming support for the Scheme, Winsway is confident that the Hong Kong Court will find that the Scheme should be sanctioned. Accordingly, I respectfully request that this Court grant recognition to the Hong Kong Proceeding and enter the Requested Relief, which is both necessary and appropriate to make the Scheme binding in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 6, 2016
Beijing, P.R.C.

_____
Cao Xin