**United States Bankruptcy Court**
**Southern District of New York**

| | |
|---|---|
| In re:<br><br>WINSWAY ENTERPRISES HOLDINGS LIMITED,<br><br>Debtor in a Foreign Proceeding. | **Chapter 15**<br>**Case No.: 16 B _____** |

### DECLARATION OF JAMIE JOHN STRANGER

I, Jamie John Stranger, declare under penalty of perjury pursuant to 28 U.S.C.

§ 1746:

1    I am a partner in the law firm of Stephenson Harwood, located at 18/F, United

Centre, 95 Queensway, Hong Kong. I submit this declaration (the "**Declaration**") in

support of the Verified Petition for Recognition of Foreign Non-Main Proceeding and

Motion for Related Relief dated [ECF 1] (the "**Petition**"),[1] filed pursuant to section

1515 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy**

**Code**")[2] by Cao Xinyi, the duly appointed foreign representative of Winsway

Enterprises Holdings Limited ("**Company**" or the "**Debtor**"), a company organized

under the laws of the British Virgin Islands ("**BVI**"), which is currently a debtor in

parallel reorganization proceedings pending in Hong Kong and the BVI.   In the

Petition, the Petitioner seeks entry of an order (i) recognising the Hong Kong

Proceeding as a foreign non-main proceeding pursuant to section 1517 of the

Bankruptcy Code, and (ii) granting additional   relief pursuant to sections 105(a),

---

[1] Except as otherwise indicated, capitalized terms used herein earn- the meanings ascribed to them in the Petition and the accompanying Declaration of Cao Xinyi Pursuant to 28 U.S.C. § 1746.
[2] Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.

1507(a), 1509(b)(2)-(3) and 1521(a) of the Bankruptcy Code to enforce a scheme of arrangement sanctioned by the High Court of Hong Kong Special Administrative Region ("**Hong Kong Court**"; the "**HK Scheme**"). The HK Scheme, and a parallel scheme of arrangement in the BVI with materially the same terms (the "**BVI Scheme**"; together the "**Schemes**") will enable the financial restructuring of the Company and certain of its subsidiaries (the "**Restructuring**") if such Schemes are duly approved by the requisite majority of affected creditors and sanctioned by the Hong Kong Court in accordance with applicable Hong Kong law and the BVI Court in accordance with applicable BVI law.

2       In this Declaration, after describing my background and qualifications, I provide a description of Hong Kong law and practice relevant to this Court's consideration of the Petition.

3       In preparing this Declaration, I have reviewed (i) a final draft of the Petition dated 17 March 2016 and (ii) relevant provisions of the Companies Ordinance (Cap. 622) and other provisions of Hong Kong law, as they relate to Chapter 15 of the Bankruptcy Code and other aspects of U.S. bankruptcy law.

## BACKGROUND AND QUALIFICATIONS

4       Pertinent aspects of my educational background are as follows: In 1997, I obtained a

bachelors of laws and bachelors of accounting degree at Murdoch University,

Australia.  I have been admitted as a solicitor in Australia since 1997 and in Hong

Kong since 2004.  I am a partner in the dispute resolution team at Stephenson

Harwood, Hong Kong and head of the insolvency and restructuring group.


5       I, together with my fellow partner Susan Moore (Stephenson Harwood LLP, London)

have been advising the Company and its subsidiaries on legal aspects of the

Restructuring, administration of the Schemes, and the extraterritorial effects and

recognition of the same since February 2015.  I note that the Company is also advised

by Reed Smith LLP with regards to various corporate issues including the rights issue

which is inter-conditional with the Schemes.  Papers submitted by the Debtor in the

Hong Kong Proceedings have been drafted by me or under my supervision.


## STATEMENTS ON HONG KONG LAW AND PRACTICE

### General principles

6       By way of background and for the benefit of the United States Bankruptcy Court I set

out the position in Hong Kong regarding the treatment of English case law.

7      As Hong Kong is a common law jurisdiction, Hong Kong courts often make reference to precedents from other common law countries. This is particularly true for English cases. In colonial times, up to 30 June 1997, the common law in force in Hong Kong was the common law of England. The decisions of the superior courts in England such as the Court of Appeal, House of Lords and the Privy Council created binding precedents for the courts in Hong Kong.

8      Since 1 July 1997, the jurisdictional connection no longer exists. No cases decided outside Hong Kong create binding precedents for the local courts. However, the Basic Law of Hong Kong states that the law in force in Hong Kong prior to 1 July 1997 would continue to be in force and that Hong Kong courts may refer to precedents from other common law jurisdictions. [3] Therefore, notwithstanding that the decisions of the superior English courts are no longer binding, they remain highly influential and persuasive to Hong Kong courts.[4]

9      The legislative regimes applicable to schemes of arrangement in England and Hong Kong are very similar in nature. Attached and marked as Exhibits A and B, respectively, are Part 13, Division 2 of the Companies Ordinance (Cap 622), and Part 26 of the Companies Act 2006 of England and Wales. As can be seen from the attached the two pieces of legislation are substantially similar with provisions in the

---

[3] Articles 81, 84, 86 and 87 of the Basic Law of the Hong Kong Special Administrative Region.
[4] Dobinson, Ian., Roebuck, Derek. *Introduction to Law in the Hong Kong SAR*. Hong Kong & London: Sweet & Maxwell. 1996; Ip, Eric C. *Law and Justice in Hong Kong, 1st Edition*. Hong Kong: Sweet & Maxwell / Thomson Reuters. 2014.

Companies Ordinance mirroring those of the Companies Act. The primary difference is that s 674 of the Companies Ordinance has different provisions for voting majorities in the context of a takeover offer. These provisions are not relevant to the financial restructuring of the Company.

10    There is not an extensive body of case law in Hong Kong in relation to schemes of arrangement. Therefore, due to the similarities between the two legislative regimes and the nature and treatment of English jurisprudence in Hong Kong, when considering Hong Kong schemes of arrangement the Hong Kong courts will be guided by English case law.

## Schemes of Arrangement

11    A scheme of arrangement is a proceeding under the laws of Hong Kong that allows companies to effect compromises or arrangements, including a restructuring of their liabilities, with their members and/or creditors (or any class of them). [5]  Schemes are available where a company is insolvent, but also where no grounds for insolvency exist (for example to give effect to a capital reduction).

12    They are particularly useful in dealing with hold-out creditors who seek an unfair advantage (e.g. additional payment) as against a substantial majority of similarly

---

[5] The legal basis for a scheme of arrangement is set out in Part 13, Division 2 of the Companies Ordinance (Cap 622).

ranked creditors in work-out negotiations. This is because schemes of arrangement enable companies and their creditors in certain instances to effect restructuring measures by majority decision and court sanction which would otherwise require the approval of 100% of the creditors contractually.  In this case there is a disparate base of holders of the Notes (each, a **"Noteholder"**) (as detailed in the affirmation of Raughley Nuzzi (an employee of Bondcom) filed in the Hong Kong Proceedings) and therefore it is highly unlikely to be possible as a practical matter to obtain the consent of every Noteholder to the proposed compromise of their claims.  Further, at this stage the Company has only identified approximately 83% of the Noteholders.  It is unlikely that all Noteholders will be identified prior to the time of the scheme meeting.

13      Creditors as a whole are protected by the fact that (i) a scheme of arrangement needs to be supported by a substantial majority of the affected creditors who vote on it (and, generally speaking, it cannot be imposed by a minority), (ii) the court will need to be satisfied that the scheme is procedurally and substantively fair (see below) and (iii) in particular, a scheme cannot impose on a creditor a lower return than it would stand to receive in the most likely alternative situation if the scheme were not to proceed (e.g. the winding-up of the scheme company).

14      The scheme process begins when a company (or a member, creditor or liquidator of the company) files an originating summons with the Hong Kong Court seeking an

order pursuant to s 670(1) of the Companies Ordinance to convene a meeting (or meetings) of the creditors and/or members of the company (as the case may be, depending on which stakeholders' interests are affected by the scheme)[6] to vote on the scheme proposal, i.e. the relevant "compromise" or "arrangement".  The application is heard by the Hong Kong Court (and may be made *ex parte* without notice to other stakeholders) or *inter partes* (with notice to other stakeholders).  At this hearing (the "**Convening Hearing**"), the Hong Kong Court may consider whether the classes of creditor proposed for voting purposes are correctly constituted.  However, this issue is typically considered by the court at the later hearing of the petition to sanction (approve) the scheme (the "**Sanction Hearing**").  The Hong Kong Court will decide at the Convening Hearing whether to order that a creditors' meeting (or meetings) be convened to discuss and vote on the proposed scheme.

15      Any such convening order must rest on a finding of requisite jurisdiction (unless the Court decides to defer consideration of this issue to the Sanction Hearing).  Regardless of the hearing at which the Court considers these issues, all material in support of the Court's jurisdiction should be before the Court for the Convening Hearing in case the Court is prepared to deal with the issue at this stage.

---

[6] For the purposes of the rest of this declaration, we will refer only to meetings of the creditors, as the Schemes will not compromise the interests of the Debtor's members and, accordingly, they will not participate.

16      To have jurisdiction under Hong Kong law to sanction a scheme, the Hong Kong

Court must have jurisdiction under the Companies Ordinance (Cap 622) to wind up

the company in question.  The Hong Kong Court may wind up not only companies

incorporated in Hong Kong but also companies incorporated in other jurisdictions

("foreign companies" for these purposes).  However, it is well established that the

Court's jurisdiction to wind up a foreign company will not be exercised unless three

core requirements are satisfied, namely:

(a)     there must be a sufficient connection of the foreign company with Hong
        Kong (but this does not necessarily mean presence of assets within the
        jurisdiction);

(b)     there must be a reasonable possibility that the winding-up order would
        benefit those applying for it; and

(c)     one or more persons interested in the distribution of the company's assets
        must be persons over whom the Court is able to exercise its jurisdiction.

17      The second and third requirements apply in the case of a winding-up but do not need

to be fulfilled in the case of a scheme of arrangement.[7]  Of the above requirements,

the key one in the case of schemes is the first one, namely that there be "sufficient

connection" with Hong Kong.  However, as well as addressing the connection issue,

the Court will also want to be satisfied that the scheme will have a real and

substantive effect.[8]

---

[7] *Re Drax Holding Ltd* [2004] 1 BCLC 10 at [25], applied in *Re LDK Solar Co Ltd* [2015] 1 HKLRD 458 at
[43].
[8] *Re Magyar Telecom BV* [2013] EWHC 3800 (Ch) at [21]; applied in *Re LDK* at [47].

18     In determining whether there is a sufficient connection, no single criterion, or any

prescribed combination of criteria, is to be considered an essential precondition.[9]

Rather the judgment is made in light of the evidence presented to the Court and the

object and purpose of the jurisdiction invoked.  In this regard, although this test is

different from that employed to establish where a company has its "centre of main

interests" (**"COMI"**) or an "establishment" for the purposes of Chapter 15 of the

Bankruptcy Code, in practice the factors that the Hong Kong Court will consider are

similar.  In this case, while the Company's COMI is not Hong Kong, it definitely has

an establishment in Hong Kong.[10]


19     As noted, the court must also be reasonably assured that the scheme, if approved, will

have a real and substantive effect in Hong Kong.[11]  As part of the substantial effect

test the Hong Kong Court will need to be satisfied that, because the scheme of

arrangement in Hong Kong is a foreign composition, the underlying debt is

discharged under the law governing the debt.[12]   That is, absent Chapter 15

recognition, it may be that the Hong Kong scheme has no effect because the rights of

the Noteholders have not been altered as a matter of US law and Noteholders could

seek to enforce their rights in respect of the Notes in the United States, or elsewhere

outside Hong Kong, notwithstanding the scheme in Hong Kong.  In this regard, the

---

[9] *Re Yung Kee Holding Ltd* [2014] 2 HKLRD 313 at [42].  This decision was heard on appeal in the case of *Re Estate of Kam Kwan Sing* [2015] HKEC 2370 (unreported).  Whilst the appeal was granted this particular point was not overturned.  The principle from *Re Yung Kee* (at [42]) was applied in *Re LDK* at [46].
[10] See, Declaration of Cao Xinyi Pursuant to 28 U.S.C. § 1746 at ¶ 50, *et seq.*
[11] *Re LDK* at [43].
[12] *Re LDK* at [49] – [52]; *Hong Kong Institute of Education v Aoki Corp* [2004] 2 HKLRD 760.

Hong Kong Court will look to independent expert evidence as to the effect of Chapter 15 Recognition and the likelihood of the US Bankruptcy Court granting the recognition order.

20    A scheme in Hong Kong alone would not adequately protect the Company from adverse creditor action in the BVI for the reason that BVI law does not provide for recognition of a foreign scheme of arrangement.   The fact that the Company is incorporated in the BVI makes it vulnerable to a winding up petition in the BVI by a Noteholder (or any other creditor).   I understand that obtaining sanction of the scheme in the BVI would provide certainty that the compromise of the Notes is effective as a matter of BVI law and would protect the Company against any such adverse action in the BVI.   There can be no guarantee that the BVI Court would recognise a scheme sanctioned in another jurisdiction (i.e. Hong Kong) as a defence to any such adverse creditor action. [13]

21    If the Hong Kong Court finds it has jurisdiction and decides to allow a creditors' meeting (or meetings) to be convened, an order will be made with directions addressing (among other things) the procedure for giving notice to the creditors of the meeting and the form of notice.   Notice of the meeting must be delivered to creditors directly affected by the scheme before the meeting in accordance with the order made by the Hong Kong Court (and in giving directions to convene the meeting, the Court

---

[13] In this regard I note that the Company is being advised by Walkers in relation to BVI law aspects of the proposed restructuring.

will need to be satisfied with the steps proposed to be taken to give notice). Such notice must set forth the date, time and place of the creditors' meeting, and an explanatory statement must be distributed to such creditors that contains sufficient material information for a typical creditor whose claim is being affected by the terms of the scheme to make an informed decision about whether the scheme is in their interests and, therefore, whether to vote in favour or otherwise at the creditors' meeting(s).

22    An explanatory statement must:

    (a)    explain the effect of the arrangement or compromise;

    (b)    state any material interests of the company's directors, whether as directors or as members or as creditors of the company or otherwise, under the arrangement or compromise; and

    (c)    state the effect of the arrangement or compromise on those interests, in so far as the effect is different from the effect on the like interests of other persons.[14]

23    The Hong Kong Court must be satisfied that the creditors have been given a sufficient explanation of the scheme and its effects.[15]   Where a scheme is propounded and the most likely alternative is the winding-up of the company, creditors proposed to be bound by the scheme should be given sufficient details concerning their estimated return in such liquidation and the expected duration of that process.   Where it is assumed that the company will continue trading following

---

[14] Companies Ordinance s 671(3).
[15] *Kansa General International Insurance Co Ltd* [1999] 2 HKLRD 429 at 437.

implementation of the scheme, the explanatory statement should include some information concerning the proposed business of the Company going forward. A failure to disclose relevant information may result in the scheme not being approved unless that failure was not sufficiently material to be said to have affected the decision on voting on the scheme.[16] The information in the explanatory statement should be up to date and adequately and accurately summarise the position at the time of the scheme meeting(s).

24     The explanatory statement is, in my understanding, comparable to the disclosure statement required under section 1125 of the Bankruptcy Code for solicitation of an acceptance or rejection of a Chapter 11 plan.[17] Affected creditors are entitled to attend (in person or by proxy) and ask questions regarding the proposed scheme at the creditors' meeting.

25     The scheme is considered approved by the creditors' meeting only if it is supported by a majority in number of the creditors present and voting (in person or by proxy) representing at least 75% by value of the claims in each class of creditors involved.[18] All creditors whose claims would be affected by the scheme are entitled to vote. In those cases in which, unlike in this case (where the Noteholders form a single class),

---

[16] *China Light Power Co Ltd and CLP Holdings* [1998] 1 HKC 170; *Kansa General International Insurance Co Ltd* [1999] 3 HKLRD 94.
[17] The Company is being advised by US counsel (Reed Smith) in relation to the Chapter 15 recognition application. The basis of my understanding that the explanatory statement and disclosure statement are comparable and similar is an explanation from Reed Smith as to the nature of the disclosure statement.
[18] s 674 of the Companies Ordinance (Cap 622).

the creditors have been divided into a number of classes with different rights, each class of creditors must approve the scheme by at least the same majorities specified above.

26    In classifying creditors into classes, regard is had to what rights they enjoy rather than what interests they have.  Persons whose rights are sufficiently similar that they can consult together with a view to their common interest should be summoned to a single meeting.[19]  In this case the Noteholders all fall within the one class as they have the same legal rights under the Indenture and a share in the consent fee was available to all Noteholders if they chose to accede to the restructuring support agreement.

27    Non-consenting creditors can be bound by the terms of the scheme only if they are within an approving class.  This contrasts with a Chapter 11 plan, which I understand permits an entire class of non-consenting creditors to be bound in certain narrow circumstances.[20]

28    In order for the scheme to become binding on creditors following the creditors' meeting(s) (assuming the requisite majority or majorities have voted in favour), it must also be approved by the Hong Kong Court at the Sanction Hearing, which I

---

[19] The definitive view as to classification of classes, the company's responsibility to determine the classes and the role of the Court was set out in *UDL Holdings Ltd* [2001] 3 HKLRD 634 at 647E – 648B.
[20] The basis of my understanding is an explanation provided by Reed Smith regarding a Chapter 11 plan.

understand is comparable to a confirmation hearing under section 1128 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3020(b)(2).[21]   All affected creditors have an opportunity to raise questions and objections to the scheme and present evidence at the Sanction Hearing.  If a particular issue has been addressed by the Hong Kong Court at the Convening Hearing (possibly on an ex parte basis), that does not prevent a creditor from raising that issue at the Sanction Hearing such that the court may re-address the issue.

29    Non-Hong Kong creditors have the same rights as creditors from Hong Kong to participate in and vote at the creditors' meetings, participate at and raise questions and issues at the Sanction Hearing in relation to the scheme, and appeal the Hong Kong Court's orders, if any.

30    The Hong Kong Court has discretion to grant or withhold its approval of the scheme at the Sanction Hearing.   In particular, it will examine whether the applicable statutory requirements are met, being that (i) the classes of creditors were properly constituted (ii) the creditors' meeting(s) were properly convened in compliance with the Court's directions (iii)  the requisite majorities of voting creditors have approved the scheme (in this case, if such majorities have approved, the supporting affirmation will include evidence from the Chairman of the creditors' meeting regarding *inter*

---

[21] The basis of my understanding is an explanation provided by Reed Smith regarding a confirmation hearing under section 1128.

*alia* the outcome of voting) and (iv) the scheme overall is one which an intelligent and honest man as a member of the class concerned and acting in respect of his own interest might reasonably approve.[22]  The Hong Kong Court will also want to be satisfied that the class was fairly represented and the statutory majority are acting bona fide and are not coercing the minority in order to promote interests adverse to those of the class.[23]  If there is more than one class, the Hong Kong Court should also satisfy itself that the arrangement is fair and equitable as between classes, in light of their respective legal rights.[24]

31    If the Hong Kong Court sanctions a scheme, it will take effect once a certified copy of the Court's order sanctioning the scheme has been registered by the Registrar of Companies for Hong Kong.  The scheme will then apply to, and be binding according to its terms upon, all creditors in the relevant class or classes, irrespective of whether or not they took part in the creditors' meeting or meetings and whether or not they voted in favour of the scheme.

**Authority to appoint foreign representative**

32    In this case, under the HK Scheme the Hong Kong Court will not appoint a fiduciary to administer the assets or operate the business of the Company.  Rather from the time the originating summons is filed up until the time the terms of the Schemes are

---

[22] *Re Daido Concrete (HK) Ltd.* (unrep, HCMP 4329 of 2000).
[23] *Re PCCW Ltd* [2009] HKEC 553 at [123]; *Re PCCW Ltd* [2009] 3 HKEC 738, at [34], [113].
[24] *Re Central Pacific Minerals NL* (2002) FCA 239.

fully implemented (including both the Convening Hearing and Sanction Hearing stages) Winsway will retain control of its assets and business affairs. This is permissible under Hong Kong law.[25] Therefore, the Company's directors had the requisite authority to appoint Cao Xinyi to act as a representative of the Company and seek recognition of the Hong Kong Proceeding by this Court.

## Third party releases

32   A company through a scheme may cause the release of its creditors' claims under guarantees provided by third parties where the guarantees are of the debt being compromised under the scheme. This position is well established in the United Kingdom. There has been no case specifically addressing this issue in Hong Kong.[26] If this issue was raised by a non-consenting creditor, in the absence of conflicting authorities in Hong Kong and the *Re LDK* precedent, it is most likely that the Hong Kong Court will adopt the position as established by the courts of the United Kingdom.

33   In accordance with the English case law likely to be followed by the Hong Kong Court,[27] the Hong Kong Court will permit the release of claims which:

---

[25] For completeness we note that other structures are possible for schemes of arrangement depending on which party is the applicant for the scheme and the proposed scheme terms, *e.g.* a provisional liquidator could make the application and they may have control over the assets and business of the relevant company; or alternatively the scheme terms could provide for a scheme administrator to have control over certain aspects.

[26] The scheme of arrangement in *Re LDK* involved release of claims against guarantors. However this was not an issue in dispute and therefore isn't given specific consideration in the judgment.

[27] *Re T&N Ltd and Others (No 3)* [2006] EWHC 1447 (Ch); *Re Lehman Brothers (Europe) International (in*

(a)     are closely connected with the scheme creditors' rights as creditors against
        the scheme company;

(b)     are personal and not proprietary rights; and

(c)     if exercised and leading to a payment by the third party guarantor, would
        result in a reduction of the scheme creditors' claims against the company.

34      The releases must also be "essential and ancillary" to the scheme.   The scheme
        jurisdiction extends to approving a scheme which varies or releases creditors' claims
        against a company on terms which require them to bring into account and release
        rights of action against third parties designed to recover the same loss.   These
        requirements ensure that the ability to release third party claims through a scheme is
        appropriately circumscribed, unlikely to be exploited or abused, and within the
        jurisdiction of the Court.   In this case, these tests are met.   The guarantees are in
        respect of the same debt as that to be compromised under the Schemes.   The release
        of the guarantees granted by the Subsidiary Guarantors is therefore ancillary to the
        arrangement between the Company and the Scheme Creditors, as well as being
        necessary for the Schemes to operate and are fair and equitable in the circumstances.
        If the guarantees were called upon by the creditors, the Subsidiary Guarantors would
        have a right of indemnity against the Company, thus defeating the object of the
        scheme.

---

*administration)* [2010] BCLC 496; *Re La Seda de Barcelona SA* [2010] EWCH 1364 (Ch) at [17] and [22]; and
*Re Magyar Telecom BV* [2013] EWHC 3800 (Ch).

35    There will also be wider releases (both under the terms of the scheme and separate deeds of release to be executed pursuant to authorities granted under the scheme) to the fullest extent permitted by law of each of the Subsidiary Guarantors, the Company, the relevant advisors and the entities involved in the Restructuring and each of their personnel and affiliates in relation to any and all claims and liabilities arising in relation to the Restructuring.  The inclusion of such releases in schemes of arrangement, both in the United Kingdom and Hong Kong, is well established market practice.

[ The remainder of this page is intentionally left blank.]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 18 March, 2016
      Hong Kong

Jamie Stranger

Stephenson Harwood
18/F United Centre
95 Queensway
HONG KONG

Counsel to Winsway Enterprises
Holdings Limited

# Exhibit A

**Part 13, Division 2 of the Companies Ordinance
(Chapter 622 of the Laws of Hong Kong)**

Companies Ordinance

A4559

# Division 2

## Arrangements and Compromises

**668.**  **Interpretation**

(1)  In this Division—

*arrangement* (安排) includes a reorganization of the company's share capital by the consolidation of shares of different classes, or by the division of shares into different classes, or both;

*company* (公司), except in section 675, means a company liable to be wound up under the Companies (Winding Up and Miscellaneous Provisions) Ordinance (Cap. 32).

(2)  In this Division, a reference to a company's articles, in the case of a company not having articles, is to be read as the instrument constituting or defining the constitution of the company.

**669.**  **Application of Division**

This Division applies if an arrangement or compromise is proposed to be entered into by a company with either or both of the following—

(a)  the creditors, or any class of the creditors, of the company;

(b)  the members, or any class of the members, of the company.

**670.**  **Court may order meeting of creditors or members to be summoned**

(1)  The Court may, on application made for the purposes of this subsection—

Companies Ordinance

A4561

    (a)  order a meeting specified in subsection (2)(a), or a meeting specified in subsection (2)(b), or both (as the case may be) to be summoned in any manner that the Court directs; and

    (b)  for the purposes of section 674(4), declare a person to be a person specified under that section.

(2)  The meeting is—

    (a)  if the arrangement or compromise is proposed to be entered into—

        (i)  with the creditors of the company, a meeting of those creditors; or

        (ii)  with a class of the creditors of the company, a meeting of that class of creditors; and

    (b)  if the arrangement or compromise is proposed to be entered into—

        (i)  with the members of the company, a meeting of those members; or

        (ii)  with a class of the members of the company, a meeting of that class of members.

(3)  Subject to subsection (4), an application for the purposes of subsection (1) may be made only by—

    (a)  in the case of a meeting of creditors, the company or any of the creditors;

    (b)  in the case of a meeting of a class of creditors, the company or any creditor of that class;

    (c)  in the case of a meeting of members, the company or any of the members; or

    (d)  in the case of a meeting of a class of members, the company or any member of that class.

Companies Ordinance

A4563

(4)   If the company is being wound up, an application for the purposes of subsection (1) may be made only by the liquidator or provisional liquidator.

(5)   An application for the purposes of subsection (1) must be made in a summary way.

**671.   Explanatory statements to be issued or made available to creditors or members**

(1)   If a meeting is summoned under section 670—

(a)   every notice summoning the meeting that is sent to a creditor or member must be accompanied by an explanatory statement complying with subsections (3) and (4); and

(b)   every notice summoning the meeting that is given by advertisement—

(i)   must include an explanatory statement complying with subsections (3) and (4); or

(ii)   must state where and how a creditor or member entitled to attend the meeting may obtain a copy of the explanatory statement.

(2)   If a notice given by advertisement states that a creditor or member entitled to attend the meeting may obtain a copy of an explanatory statement, the company must provide a copy of the statement, free of charge, to a creditor or member applying in the manner specified in the notice.

(3)   An explanatory statement—

(a)   must explain the effect of the arrangement or compromise; and

(b)   must state—

Companies Ordinance

A4565

       (i)    any material interests of the company's directors, whether as directors or as members or as creditors of the company or otherwise, under the arrangement or compromise; and

      (ii)   the effect of the arrangement or compromise on those interests, in so far as the effect is different from the effect on the like interests of other persons.

(4)   If the arrangement or compromise affects the rights of the company's debenture holders, an explanatory statement must give the like explanation as respects the trustees of any deed for securing the issue of the debentures as it is required to give as respects the directors.

(5)   If subsection (1) or (2) is contravened, all of the following commit an offence—

     (a)   the company;

     (b)   every responsible person of the company;

     (c)   a liquidator or provisional liquidator of the company who authorizes or permits, participates in, or fails to take all reasonable steps to prevent, the contravention;

     (d)   a trustee of a deed for securing the issue of the company's debentures who authorizes or permits, participates in, or fails to take all reasonable steps to prevent, the contravention.

(6)   A person who commits an offence under subsection (5) is liable to a fine at level 5.

(7)   If a person is charged with an offence under subsection (5) for a contravention of subsection (1), it is a defence to establish that the contravention was due to the refusal of another person, who was a director of the company or a trustee for debenture holders of the company, to supply the necessary particulars of that other person's interests.

Companies Ordinance

A4567

**672.   Directors and trustees must notify company of interests under arrangement or compromise etc.**

(1)   If a meeting is summoned under section 670, a director of the company, or a trustee for its debenture holders, must give notice to the company of any matter relating to the director or trustee that may be necessary for the purposes of section 671.

(2)   A person who contravenes subsection (1) commits an offence and is liable to a fine at level 5.

**673.   Court may sanction arrangement or compromise**

(1)   This section applies if the creditors or the class of creditors, or the members or the class of members, or both, with whom the arrangement or compromise is proposed to be entered into, agree or agrees to the arrangement or compromise.

(2)   The Court may, on application made for the purposes of this subsection, sanction the arrangement or compromise.

(3)   Subject to subsection (4), an application for the purposes of subsection (2) may be made only by—

    (a)   in the case of an arrangement or compromise proposed to be entered into with the creditors of a company, the company or any of the creditors;

    (b)   in the case of an arrangement or compromise proposed to be entered into with a class of creditors of a company, the company or any creditor of that class;

    (c)   in the case of an arrangement or compromise proposed to be entered into with the members of a company, the company or any of the members; or

Companies Ordinance

A4569

(d) in the case of an arrangement or compromise proposed to be entered into with a class of members of a company, the company or any member of that class.

(4) If the company is being wound up, an application for the purposes of subsection (2) may be made only by the liquidator or provisional liquidator.

(5) An arrangement or compromise sanctioned by the Court under subsection (2) is binding—

(a) on the company or, if the company is being wound up, on the liquidator or provisional liquidator and contributories of the company; and

(b) on the creditors or the class of creditors, or the members or the class of members, or both, with whom the arrangement or compromise is proposed to be entered into.

(6) An order made by the Court under subsection (2) has no effect until an office copy of the order is registered by the Registrar under Part 2.

(7) If the order of the Court amends the company's articles, or any resolution or agreement to which section 622 applies, the office copy of that order delivered to the Registrar for registration for the purposes of subsection (6) must be accompanied by a copy of those articles, or the resolution or agreement, as amended.

(8) If subsection (7) is contravened, the company, and every responsible person of the company, commit an offence, and each is liable to a fine at level 3.

**674. Provision supplementary to section 673(1): agreement to arrangement or compromise**

(1) For the purposes of section 673(1)—

Companies Ordinance

A4571

Part 13—Division 2
Section 674                                    Ord. No. 28 of 2012

(a)  the creditors agree to the arrangement or compromise
     if, at a meeting of the creditors summoned under
     section 670, a majority in number representing at least
     75% in value of the creditors present and voting, in
     person or by proxy, agree to the arrangement or
     compromise;

(b)  a class of creditors agrees to the arrangement or
     compromise if, at a meeting of the class of creditors
     summoned under section 670, a majority in number
     representing at least 75% in value of the class of
     creditors present and voting, in person or by proxy,
     agree to the arrangement or compromise;

(c)  subject to subsection (2)(a), the members agree to the
     arrangement or compromise if, at a meeting of the
     members summoned under section 670—

     (i)   members representing at least 75% of the voting
           rights of the members present and voting, in
           person or by proxy, agree to the arrangement or
           compromise; and

     (ii)  unless the Court orders otherwise, a majority in
           number of the members present and voting, in
           person or by proxy, agree to the arrangement or
           compromise; and

(d)  subject to subsection (2)(b), a class of members agrees
     to the arrangement or compromise if, at a meeting of
     the class of members summoned under section 670—

     (i)   members representing at least 75% of the voting
           rights of the class of members present and voting,
           in person or by proxy, agree to the arrangement
           or compromise; and

     (ii)  unless the Court orders otherwise, a majority in
           number of the class of members present and
           voting, in person or by proxy, agree to the
           arrangement or compromise.

Companies Ordinance

A4573

(2)   However, where the arrangement involves a general offer within the meaning of section 707 or a takeover offer—

    (a)   the members agree to the arrangement if—

        (i)   at a meeting of the members summoned under section 670, members representing at least 75% of the voting rights of the members present and voting, in person or by proxy, agree to the arrangement; and

        (ii)   the votes cast against the arrangement at the meeting do not exceed 10% of the total voting rights attached to all disinterested shares in the company;

    (b)   a class of members agrees to the arrangement if—

        (i)   at a meeting of the class of members summoned under section 670, members representing at least 75% of the voting rights of the class of members present and voting, in person or by proxy, agree to the arrangement; and

        (ii)   the votes cast against the arrangement at the meeting do not exceed 10% of the total voting rights attached to all disinterested shares of the class in the company.

(3)   In subsection (2)—

*disinterested shares* (無利害關係股份) means—

    (a)   in the case of a takeover offer, shares in the company other than those held—

        (i)   by the offeror, or by a nominee on behalf of the offeror;

        (ii)   by an associate of the offeror (except a person who falls within section 667(1)(a)(vii) or (b)(iii) or a person specified in subsection (4)); or

Companies Ordinance

A4575

      (iii)  by a person who is a party to an acquisition agreement within the meaning of section 667(5) with the offeror (except a person specified in subsection (4)), or by a nominee on behalf of the person under the acquisition agreement;

  (b)  in the case of a general offer, shares in the company other than those held—

      (i)  by a non-tendering member as defined by section 705(1), or by a nominee on behalf of the member;

      (ii)  by an associate of such a non-tendering member (except a person who falls within section 667(1)(a)(vii) or (b)(iii) or a person specified in subsection (4));

      (iii)  by a nominee on behalf of the repurchasing company;

      (iv)  by an associate of such a repurchasing company (except a person who falls within section 667(2)(c) or a person specified in subsection (4)); or

      (v)  by a person who is a party to such an acquisition agreement with such a non-tendering member or repurchasing company (except a person specified in subsection (4)), or by a nominee on behalf of the person under the acquisition agreement.

(4)  The person specified for the purposes of paragraph (a)(ii) and (iii) and (b)(ii), (iv) and (v) of the definition of *disinterested shares* in subsection (3) is a person declared under section 670(1)(b) to be a person specified under this section.

(5)  For the purposes of subsections (2) and (3)—

  (a)  an offer to acquire shares in a company is a takeover offer if—

Companies Ordinance

A4577

  (i) it is an offer to acquire all the shares, or all the shares of any class, in the company, except those that, at the date of the offer, are held by the offeror; and

  (ii) the terms of the offer are the same—

   (A) where the offer does not relate to shares of different classes, in relation to all the shares to which the offer relates; or

   (B) where the offer relates to shares of different classes, in relation to all the shares of each class to which the offer relates; and

 (b) an offer under which consideration is provided for the cancellation of shares in a company is also a takeover offer if—

  (i) it is an offer under which consideration is provided for the cancellation of all the shares, or all the shares of any class, in the company, except—

   (A) those that, at the date of the offer, are held by the offeror;

   (B) those that are specified in the offer document as shares that are not to be cancelled under the offer; and

   (C) those that, at the date of the offer, are held by a member residing in a place where such an offer is contrary to the law of the place; and

  (ii) the terms of the offer are the same—

   (A) where the offer does not relate to shares of different classes, in relation to all the shares to which the offer relates; or

Companies Ordinance

A4579

Part 13—Division 2

Section 674                                                    Ord. No. 28 of 2012

               (B)   where the offer relates to shares of different classes, in relation to all the shares of each class to which the offer relates.

(6)   In subsection (5)—

*shares* (股份) means shares that have been allotted on the date of the offer.

(7)   In subsection (5)(a)(i) and (b)(i), a reference to shares that are held by an offeror—

    (a)   includes shares that the offeror has contracted, unconditionally or subject to conditions being satisfied, to acquire; but

    (b)   excludes shares that are the subject of a contract—

        (i)   entered into by the offeror with a holder of shares in the company in order to secure that the holder will accept the offer when it is made; and

        (ii)   entered into for no consideration and by deed, for consideration of negligible value, or for consideration consisting of a promise by the offeror to make the offer.

(8)   For the purposes of subsection (5)(a)(ii) and (b)(ii), even though, in relation to all the shares, or all the shares of a class of shares, to which an offer relates, there is a difference in the value of consideration offered for the shares allotted earlier as against the value of consideration offered for those allotted later, the terms of the offer are to be regarded as the same in relation to all the shares concerned if—

    (a)   shares carry an entitlement to a particular dividend that other shares of the same class, by reason of being allotted at a different time, do not carry;

    (b)   the difference in value of consideration merely reflects that difference in entitlement to dividend; and

Companies Ordinance

A4581

(c)   but for the difference in the value of consideration, the terms of the offer would be the same in relation to all the shares concerned.

(9)   For the purposes of subsection (5)(a)(ii) and (b)(ii), even though, in relation to all the shares, or all the shares of a class of shares, to which an offer relates, there is a difference in the form of consideration offered, the terms of the offer are to be regarded as the same in relation to all the shares concerned if—

(a)   the law of a place outside Hong Kong precludes an offer of consideration in the form specified in the terms of the offer, or precludes it except after compliance by the offeror with conditions with which the offeror is unable to comply or that the offeror regards as unduly onerous;

(b)   consideration in another form is offered to a person to whom an offer of consideration in the specified form is so precluded;

(c)   the person is able to receive consideration in that other form that is of substantially equivalent value; and

(d)   but for the difference in the form of consideration, the terms of the offer would be the same in relation to all the shares concerned.

(10)   Despite subsection (5), a takeover offer may include, among the shares to which it relates, shares that will be allotted after the date of the offer but before a date specified in the offer.

(11)   In subsections (2), (3), (4), (5), (6), (7), (8), (9) and (10), a reference to shares in a company includes—

(a)   debentures that are convertible into shares in the company; and

Companies Ordinance

(b) securities of the company that are convertible into, or entitle the holder to subscribe for, shares in the company.

Those subsections apply to those debentures or securities as if they were shares of a separate class of the company, and a reference to a member or a holder of shares in those subsections is to be read accordingly.

**675.** **Court's additional powers to facilitate reconstruction or amalgamation**

(1) This section applies if—

(a) an application is made for the purposes of section 673(2) to sanction the arrangement or compromise; and

(b) it is shown to the Court that—

(i) the arrangement or compromise is proposed for the purpose of, or in connection with, a scheme for the reconstruction of one or more companies, or for the amalgamation of 2 or more companies; and

(ii) under the scheme, the property or undertaking of any company concerned in the scheme, or any part of that property or undertaking, is to be transferred to another company.

(2) If the Court sanctions the arrangement or compromise, it may, by the order or a subsequent order, make provision for any or all of the following—

(a) the transfer of the transferor's property, undertaking or liabilities, or any part of it or them, to the transferee;

(b) the allotting or appropriation by the transferee of any shares, debentures, policies, or other like interests in the transferee which, under the arrangement or

Companies Ordinance

A4585

compromise, are to be allotted or appropriated by the transferee to or for any person;

(c)   the continuation by or against the transferee of any legal proceedings pending by or against the transferor;

(d)   the dissolution, without winding up, of the transferor;

(e)   the provision to be made for any person, who within the time, and in the manner, that the Court directs, dissents from the arrangement or compromise;

(f)   the transfer or allotting of any interest in property to any person concerned in the arrangement or compromise;

(g)   any incidental, consequential and supplemental matters that are necessary to ensure that the reconstruction or amalgamation is fully and effectively carried out.

(3)   If an order provides for the transfer of property under subsection (2)—

(a)   the property is, by virtue of the order, transferred to, and vests in, the transferee; and

(b)   where the order so directs, the property vests freed from any charge that is to cease to have effect by virtue of the arrangement or compromise.

(4)   If an order provides for the transfer of liabilities under subsection (2), the liabilities are, by virtue of the order, transferred to, and become liabilities of, the transferee.

(5)   If the Court, by an order, makes provision for any matter under subsection (2), the order has no effect to the extent to which it purports to make the provision until an office copy of the order is registered by the Registrar under Part 2.

Companies Ordinance

A4587

(6)    If the order of the Court amends the company's articles, or any resolution or agreement to which section 622 applies, the office copy of that order delivered to the Registrar for registration for the purposes of subsection (5) must be accompanied by a copy of those articles, or the resolution or agreement, as amended.

(7)    If subsection (6) is contravened, the company, and every responsible person of the company, commit an offence, and each is liable to a fine at level 3.

(8)    In this section—

*liabilities* (法律責任) includes—

(a)    duties of a personal character and incapable of being assigned or performed vicariously under the law; and

(b)    duties of any other description;

*property* (財產) includes—

(a)    rights and powers of a personal character and incapable of being assigned or performed vicariously under the law; and

(b)    rights and powers of any other description;

*transferee* (受讓人), in relation to an arrangement or compromise proposed for the purpose of a scheme of reconstruction or amalgamation, means the company to which another company's property, undertaking or liabilities, or any part of it or them, is to be transferred under the scheme;

*transferor* (出讓人), in relation to an arrangement or compromise proposed for the purpose of a scheme of reconstruction or amalgamation, means the company whose property, undertaking or liabilities, or any part of it or them, is to be transferred to another company under the scheme.

Companies Ordinance

A4589

**676.    Court may order costs**

(1)    This section applies in relation to an application made for the purposes of section 673(2) for an order of the Court sanctioning an arrangement that falls within section 674(2).

(2)    The Court may make any order that it thinks fit about the costs incurred or to be incurred by a member who dissents from the arrangement in opposing the application.

(3)    An order may require the company or any other party to the application to indemnify the member against the costs incurred or to be incurred by the member.

(4)    The Court may only make an order about costs (including the requirement as to indemnification) under this section in favour of the member if it is satisfied that the member was acting in good faith in, and had reasonable grounds for, opposing the application.

(5)    The Court may only make an order about costs under this section against the member if the member's opposition to the application is frivolous or vexatious.

**677.    Company's articles to be accompanied by order of Court**

(1)    Every copy of the company's articles issued by the company after an order is made for the purposes of section 673 or 675 must be accompanied by a copy of the order, unless the effect of the order, and the effect of the arrangement or compromise to which the order relates, has been incorporated into the articles by alteration to those articles.

(2)    If subsection (1) is contravened, the company, and every responsible person of the company, commit an offence, and each is liable to a fine at level 3.

**Exhibit B**

**Part 26 of the Companies Act 2006 of England and Wales**

    (b)   authorise the responsible person to require information to be provided to him for the purposes of the arrangements,

    (c)   make provision about—

        (i)   the charging by the responsible person of fees in connection with the arrangements and the destination of such fees (including provision modifying any enactment which would otherwise apply in relation to fees payable to the responsible person), and

        (ii)  the making of payments under the arrangements by the registrar to the responsible person,

    (d)   require the registrar to make copies of the arrangements available to the public (in hard copy or electronic form).

(6)   In this section "specified" means specified in an order under this section.

(7)   A description of charge may be specified, in particular, by reference to one or more of the following—

    (a)   the type of company by which it is created,

    (b)   the form of charge which it is,

    (c)   the description of assets over which it is granted,

    (d)   the length of the period between the date of its registration in the special register and the date of its creation.

(8)   Provision may be made under this section relating to registers maintained under the law of a country or territory outside the United Kingdom.

(9)   An order under this section is subject to negative resolution procedure.

**894   General power to make amendments to this Part**

(1)   The Secretary of State may by regulations under this section—

    (a)   amend this Part by altering, adding or repealing provisions,

    (b)   make consequential amendments or repeals in this Act or any other enactment (whether passed or made before or after this Act).

(2)   Regulations under this section are subject to affirmative resolution procedure.

## PART 26

### ARRANGEMENTS AND RECONSTRUCTIONS

*Application of this Part*

**895   Application of this Part**

(1)   The provisions of this Part apply where a compromise or arrangement is proposed between a company and—

    (a)   its creditors, or any class of them, or

    (b)   its members, or any class of them.

(2)   In this Part—

       "arrangement" includes a reorganisation of the company's share capital by the consolidation of shares of different classes or by the division of shares into shares of different classes, or by both of those methods; and

"company"—

    (a)  in section 900 (powers of court to facilitate reconstruction or amalgamation) means a company within the meaning of this Act, and

    (b)  elsewhere in this Part means any company liable to be wound up under the Insolvency Act 1986 (c. 45) or the Insolvency (Northern Ireland) Order 1989 (S.I. 1989/2405 (N.I. 19)).

(3)  The provisions of this Part have effect subject to Part 27 (mergers and divisions of public companies) where that Part applies (see sections 902 and 903).

*Meeting of creditors or members*

### 896   Court order for holding of meeting

(1)  The court may, on an application under this section, order a meeting of the creditors or class of creditors, or of the members of the company or class of members (as the case may be), to be summoned in such manner as the court directs.

(2)  An application under this section may be made by—

    (a)  the company,

    (b)  any creditor or member of the company, or

    (c)  if the company is being wound up or an administration order is in force in relation to it, the liquidator or administrator.

### 897   Statement to be circulated or made available

(1)  Where a meeting is summoned under section 896—

    (a)  every notice summoning the meeting that is sent to a creditor or member must be accompanied by a statement complying with this section, and

    (b)  every notice summoning the meeting that is given by advertisement must either—

        (i)  include such a statement, or

        (ii)  state where and how creditors or members entitled to attend the meeting may obtain copies of such a statement.

(2)  The statement must—

    (a)  explain the effect of the compromise or arrangement, and

    (b)  in particular, state—

        (i)  any material interests of the directors of the company (whether as directors or as members or as creditors of the company or otherwise), and

        (ii)  the effect on those interests of the compromise or arrangement, in so far as it is different from the effect on the like interests of other persons.

(3)  Where the compromise or arrangement affects the rights of debenture holders of the company, the statement must give the like explanation as respects the trustees of any deed for securing the issue of the debentures as it is required to give as respects the company's directors.

(4)  Where a notice given by advertisement states that copies of an explanatory statement can be obtained by creditors or members entitled to attend the meeting, every such creditor or member is entitled, on making application in the manner indicated by the notice, to be provided by the company with a copy of the statement free of charge.

(5)  If a company makes default in complying with any requirement of this section, an offence is committed by—
   (a)  the company, and
   (b)  every officer of the company who is in default.
This is subject to subsection (7) below.

(6)  For this purpose the following are treated as officers of the company—
   (a)  a liquidator or administrator of the company, and
   (b)  a trustee of a deed for securing the issue of debentures of the company.

(7)  A person is not guilty of an offence under this section if he shows that the default was due to the refusal of a director or trustee for debenture holders to supply the necessary particulars of his interests.

(8)  A person guilty of an offence under this section is liable—
   (a)  on conviction on indictment, to a fine;
   (b)  on summary conviction, to a fine not exceeding the statutory maximum.

**898   Duty of directors and trustees to provide information**

(1)  It is the duty of—
   (a)  any director of the company, and
   (b)  any trustee for its debenture holders,
to give notice to the company of such matters relating to himself as may be necessary for the purposes of section 897 (explanatory statement to be circulated or made available).

(2)  Any person who makes default in complying with this section commits an offence.

(3)  A person guilty of an offence under this section is liable on summary conviction to a fine not exceeding level 3 on the standard scale.

*Court sanction for compromise or arrangement*

**899   Court sanction for compromise or arrangement**

(1)  If a majority in number representing 75% in value of the creditors or class of creditors or members or class of members (as the case may be), present and voting either in person or by proxy at the meeting summoned under section 896, agree a compromise or arrangement, the court may, on an application under this section, sanction the compromise or arrangement.

(2)  An application under this section may be made by—
   (a)  the company,
   (b)  any creditor or member of the company, or

    (c)   if the company is being wound up or an administration order is in force in relation it, the liquidator or administrator.

(3)   A compromise or agreement sanctioned by the court is binding on—

    (a)   all creditors or the class of creditors or on the members or class of members (as the case may be), and

    (b)   the company or, in the case of a company in the course of being wound up, the liquidator and contributories of the company.

(4)   The court's order has no effect until a copy of it has been delivered to the registrar.

*Reconstructions and amalgamations*

**900   Powers of court to facilitate reconstruction or amalgamation**

(1)   This section applies where application is made to the court under section 899 to sanction a compromise or arrangement and it is shown that—

    (a)   the compromise or arrangement is proposed for the purposes of, or in connection with, a scheme for the reconstruction of any company or companies, or the amalgamation of any two or more companies, and

    (b)   under the scheme the whole or any part of the undertaking or the property of any company concerned in the scheme ("a transferor company") is to be transferred to another company ("the transferee company").

(2)   The court may, either by the order sanctioning the compromise or arrangement or by a subsequent order, make provision for all or any of the following matters—

    (a)   the transfer to the transferee company of the whole or any part of the undertaking and of the property or liabilities of any transferor company;

    (b)   the allotting or appropriation by the transferee company of any shares, debentures, policies or other like interests in that company which under the compromise or arrangement are to be allotted or appropriated by that company to or for any person;

    (c)   the continuation by or against the transferee company of any legal proceedings pending by or against any transferor company;

    (d)   the dissolution, without winding up, of any transferor company;

    (e)   the provision to be made for any persons who, within such time and in such manner as the court directs, dissent from the compromise or arrangement;

    (f)   such incidental, consequential and supplemental matters as are necessary to secure that the reconstruction or amalgamation is fully and effectively carried out.

(3)   If an order under this section provides for the transfer of property or liabilities—

    (a)   the property is by virtue of the order transferred to, and vests in, the transferee company, and

    (b)   the liabilities are, by virtue of the order, transferred to and become liabilities of that company.

(4)   The property (if the order so directs) vests freed from any charge that is by virtue of the compromise or arrangement to cease to have effect.

(5)   In this section—

"property" includes property, rights and powers of every description; and "liabilities" includes duties.

(6)   Every company in relation to which an order is made under this section must cause a copy of the order to be delivered to the registrar within seven days after its making.

(7)   If default is made in complying with subsection (6) an offence is committed by—

(a)   the company, and

(b)   every officer of the company who is in default.

(8)   A person guilty of an offence under subsection (7) is liable on summary conviction to a fine not exceeding level 3 on the standard scale and, for continued contravention, a daily default fine not exceeding one-tenth of level 3 on the standard scale.

*Obligations of company with respect to articles etc*

**901   Obligations of company with respect to articles etc**

(1)   This section applies—

(a)   to any order under section 899 (order sanctioning compromise or arrangement), and

(b)   to any order under section 900 (order facilitating reconstruction or amalgamation) that alters the company's constitution.

(2)   If the order amends—

(a)   the company's articles, or

(b)   any resolution or agreement to which Chapter 3 of Part 3 applies (resolution or agreement affecting a company's constitution),

the copy of the order delivered to the registrar by the company under section 899(4) or section 900(6) must be accompanied by a copy of the company's articles, or the resolution or agreement in question, as amended.

(3)   Every copy of the company's articles issued by the company after the order is made must be accompanied by a copy of the order, unless the effect of the order has been incorporated into the articles by amendment.

(4)   In this section—

(a)   references to the effect of the order include the effect of the compromise or arrangement to which the order relates; and

(b)   in the case of a company not having articles, references to its articles shall be read as references to the instrument constituting the company or defining its constitution.

(5)   If a company makes default in complying with this section an offence is committed by—

(a)   the company, and

(b)   every officer of the company who is in default.

(6)   A person guilty of an offence under this section is liable on summary conviction to a fine not exceeding level 3 on the standard scale.

## PART 27

MERGERS AND DIVISIONS OF PUBLIC COMPANIES

### CHAPTER 1

INTRODUCTORY

**902    Application of this Part**

(1)   This Part applies where—

  (a)   a compromise or arrangement is proposed between a public company and—

    (i)    its creditors or any class of them, or

    (ii)   its members or any class of them,

  for the purposes of, or in connection with, a scheme for the reconstruction of any company or companies or the amalgamation of any two or more companies,

  (b)   the scheme involves—

    (i)    a merger (as defined in section 904), or

    (ii)   a division (as defined in section 919), and

  (c)   the consideration for the transfer (or each of the transfers) envisaged is to be shares in the transferee company (or one or more of the transferee companies) receivable by members of the transferor company (or transferor companies), with or without any cash payment to members.

(2)   In this Part—

  (a)   a "new company" means a company formed for the purposes of, or in connection with, the scheme, and

  (b)   an "existing company" means a company other than one formed for the purposes of, or in connection with, the scheme.

(3)   This Part does not apply where the company in respect of which the compromise or arrangement is proposed is being wound up.

**903    Relationship of this Part to Part 26**

(1)   The court must not sanction the compromise or arrangement under Part 26 (arrangements and reconstructions) unless the relevant requirements of this Part have been complied with.

(2)   The requirements applicable to a merger are specified in sections 905 to 914. Certain of those requirements, and certain general requirements of Part 26, are modified or excluded by the provisions of sections 915 to 918.

(3)   The requirements applicable to a division are specified in sections 920 to 930. Certain of those requirements, and certain general requirements of Part 26, are modified or excluded by the provisions of sections 931 to 934.